[No. C008771. Third Dist. Oct. 31, 1991.]

DEBRA ZELLERINO, Plaintiff and Appellant, v.
LEROY BROWN et al., Defendants and Respondents.

## Counsel

Peter E. Mills for Plaintiff and Appellant.

Longyear, O'Dea & Lavra, Bruce F. Reeves, Van Longyear, David J. Bills, Diepenbrock, Wulff, Plant & Hannegan, Raymond M. Cadei, Kathleen R. Makel and Charity Kenyon for Defendants and Respondents.

## Opinion

**CARR, Acting P. J.**—In this appeal the critical question is whether a party who makes a defective demand for the exchange of expert trial witnesses pursuant to Code of Civil Procedure section 2034,[1] may obtain relief pursuant to section 473. Ancillary issues also tendered are whether the trial court abused its discretion in granting relief under section 473 by issuing an order compelling discovery and in granting an in limine motion when the plaintiff failed to comply with that order.

This is a medical malpractice case in which defendants, unaware that plaintiff had not retained any medical experts, served a discovery demand for an exchange of expert witnesses. The demand was early. When plaintiff served a written "objection" that the demand was untimely, defendants obtained relief by a motion pursuant to section 473. The trial court ordered plaintiff to disclose her expert witnesses. Plaintiff ignored the order. A few

---

[1]Further unspecified statutory references are to this code.

days before trial plaintiff retained and disclosed two expert witnesses. At trial, as a sanction for her abuse of the discovery system, the court refused to permit plaintiff to introduce the testimony of these experts. Nonsuit was granted to defendants. We shall affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Debra Zellerino (Zellerino) received medical treatment while a prisoner in the Sacramento County jail. She filed a suit for medical malpractice and violation of civil rights by form complaint on March 8, 1984, naming as defendants the Regents of the University of California (Regents), the County of Sacramento (County) and Dr. Leroy Brown (Brown). Apparently because the complaint lacked a certificate of merit (former § 411.30), an amended complaint was filed on March 10, 1988. Neither complaint describes the alleged injury. The certificate of merit filed with the amended complaint states Zellerino's attorney, Peter E. Mills, personally reviewed the facts and consulted with a licensed physician and surgeon who "is knowledgable [*sic*] of the kind of injury sustained by plaintiff herein."

The civil rights cause of action was withdrawn and is not at issue herein. The trial court granted County judgment on the pleadings based on governmental immunity (Gov. Code, § 844.6,) and County is not a party on appeal.

Zellerino moved to advance the case because the five-year mandatory dismissal statute (§ 583.310) would run on January 17, 1990. The motion to advance was granted and on September 27, 1989, the clerk mailed notice of the trial setting conference set for October 10, 1989 (further unspecified dates are to 1989). Trial was set to begin on January 8, 1990.

On October 6, the Regents served a demand for exchange of expert witness lists, specifying the date of exchange as October 26. This demand complied with the time limits contained in a local Accelerated Civil Trial (ACT) project rule, which required the demand be sent between the date notice of the trial setting conference is mailed (here, September 27) and 15 days thereafter. (Former Super. Ct. Sacramento County Rules, rule 1614.5(a); see former Gov. Code, § 68612.)

The ACT project applies to cases filed after January 1, 1988, and other cases in the discretion of the court. (Super. Ct. Sacramento County Rules, rule 1601(a).) Since the *original* complaint was filed in 1984, this case was not subject to ACT and the local rule. The demand did not comply with the discovery act, which provides that a demand may be made "*After* the setting of the initial trial date . . . ." (§ 2034, subd. (a), italics added; see 3

DeMeo, Cal. Deposition & Discovery Practice (1991) § 64.12, p. 64-11, hereafter *DeMeo.*) Since the trial date was set on October 10, the October 6 demand was four days early.

Zellerino did not move for a protective order in response to the premature demand, but, on October 30, served by mail an "Objection to [Regent's] Demand for Exchange of Expert Witness List . . . and Plaintiff's Request that Defendant Withdraw *its* Demand for Exchange of Experts."

On November 15, the Regents filed a motion for relief from their mistake pursuant to section 473 together with a motion to compel the exchange of experts.

In support of the motion for relief, Regents' counsel filed a declaration that he mistakenly believed the case fell within the ambit of ACT and the local rules pertinent thereto and prepared the demand accordingly; that he discovered the mistake on October 26 and sought to resolve the matter informally. He contacted counsel for Brown, who in turn agreed to disclose experts on the date prescribed by section 2034 (November 20) and who agreed to contact Mr. Mills, Zellerino's counsel. According to Brown's counsel's declaration, he spoke with Mr. Mills's secretary, and learned that Mr. Mills had already calendared the disclosure for November 20. He told Mr. Mills's secretary "I was relying on that conversation and . . . I asked her to have Mr. Mills call me if he had any problems with [disclosing on November 20]."

Mr. Mills did not call either attorney. After receipt of Zellerino's "Objection," counsel for the Regents placed several telephone calls to Mr. Mills's office but did not speak to him until November 8, at which point Mr. Mills told him he would not comply with the discovery request.

The motion correctly stated October 30 was the last day to serve the demand. (§ 2034, subd. (b).)

In the motion for relief counsel asserted that both defense counsel "had been lulled into believing that Plaintiff had agreed to exchange expert witness lists on November 20[.] Had Defendants been aware of Plaintiff's objection and refusal to cooperate with regard to the exchange of expert witness lists, a second Demand for Exchange could have been served within the [section] 2034 time limits."

In opposition to the motion Zellerino asserted that since defense counsel knew of the mistake by October 26 and had until October 30 to file a timely motion, the failure to bring a timely motion was inexcusable; and that

section 473 did not authorize relief in these circumstances. Zellerino claimed prejudice in that she would have to participate in the time and expense of "any expert depositions to which plaintiff is not presently exposed."

The court found no prejudice to Zellerino caused by the early demand and granted the motion for relief. An order compelling the exchange of experts that day, November 20, was granted. Zellerino petitioned for writ relief but no stay of this order was obtained.

At the mandatory settlement conference on December 21, Mr. Mills refused to say whether Zellerino had any experts. By letter from Mr. Mills dated December 28, he informally advised defendants of the names of the experts and stated that Zellerino had had no experts to disclose on November 20. Zellerino's position was that the order of November 20 was ineffective and that the defendants were not entitled to any information about the expert witnesses. Zellerino mailed her list of experts on January 2, 1990, providing declarations as to the two experts she had retained, but provided no reports or writings.

On the first day of trial, January 8, 1990, defendants moved to preclude Zellerino from introducing expert testimony on the ground that Zellerino had violated the court order of November 20. (§§ 2023, subd. (b)(3), 2034, subd. (j).) In opposition to the motion, Zellerino again urged that the expert demand was untimely. She conceded defendants had complied with the order to disclose experts on November 20 but did not explain why she waited six weeks before complying with the court order, except to state that Mr. Mills was in trial on November 20, "and was unable to both find experts and disclose them in one day." No explanation was given why experts had not been retained sometime in the previous five years. Zellerino had not filed a motion for leave to submit tardy expert witness information as required by section 2034, subdivision (l).

The trial court granted defendants' motion to exclude Zellerino's expert witnesses and subsequently granted a nonsuit to defendants. The order granting the nonsuit states that plaintiff's offer of proof made following the order excluding expert witnesses was deficient in that there was no evidence of the standard of care.

## DISCUSSION

There are three issues tendered by this appeal: (1) are section 473 proceedings available for relief from an untimely demand for expert trial witnesses under section 2034, (2) did the court abuse its discretion in

granting the motion to compel discovery and (3) did the court abuse its discretion in granting the *in limine* motion to exclude expert trial testimony.

## I. RELIEF UNDER SECTION 473

Section 473 provides in part:

"The court may, in furtherance of justice, and on such terms as may be proper, allow a party to amend any pleading or proceeding . . . by correcting a mistake . . . .

". . . . . . . . . . . . . . . . . . . . . . . .

"The court may, upon such terms as may be just, relieve a party or his or her legal representative from a judgment, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."

■■■ Zellerino contends this section cannot relieve a propounding party from failure to file a timely demand for expert witnesses, as the demand is not a " 'judgment, order, or other proceeding taken against' " the proponent. A broader question is whether any section 473 relief is available in discovery matters. (2 Weil & Brown, Cal. Practice Guide (The Rutter Group 1990) Discovery, 8:1150, p. 8F-54 [failure to file interrogatories], 8:1386.3a, p. 8G-25 [admissions], & 8:1465.3, p. 8H-10.1 [inspection demands], hereafter *Weil & Brown*.)

The discovery act is generally viewed as comprehensive and exclusive. *Weil & Brown* explains: "Whether [relief] is available under CCP § 473 is presently unclear. (CCP § 473 nominally applies to any 'judgment, order or *other proceeding* . . . .' However, the Discovery Act arguably provides the *exclusive* controls on relief from discovery defaults.)" (2 *Weil & Brown*, ¶¶ 8:1386.3a, pp. 8G:25-25.1, & 8:1465.3, p. 8H-10.1.) No authority is cited in support of this explanation.

Under the cases decided prior to the discovery act, section 473 relief was available in the context of a flawed discovery request. (*Jahn* v. *Brickey* (1985) 168 Cal.App.3d 399, 404 [214 Cal.Rptr. 119]. See also *Davis* v. *Chew* (1979) 95 Cal.App.3d. Supp. 13, 17 [157 Cal.Rptr. 653].)

Zellerino seeks to distinguish *Jahn* and similar cases on the ground they involve a party responding to discovery, rather than one propounding a discovery request. The cases do not support such a distinction. In the case of demands for expert witness disclosure, the proponent has no proceeding

against him or her, but has arguably initiated a "proceeding" which permits relief under the first paragraph of section 473, permitting "an amendment to *any* pleading or *proceeding* in other particulars; . . ." (Italics added.)

The issue is whether a discovery demand pursuant to section 2034 is a "proceeding" within the meaning of section 473. "Proceeding" has different meanings in different contexts. Narrowly, it means an action or remedy before a court. (E.g., *People* v. *Gutierrez* (1986) 177 Cal.App.3d 92, 99-100 [222 Cal.Rptr. 699] [Cal. Const., art. I, § 14 gives a right to an interpreter during proceedings "held before a judicial tribunal."]; *Gibson* v. *County of Sacramento* (1918) 37 Cal.App. 523, 526 ["criminal proceeding" in former Pol. Code, § 4307 "means some authorized step taken before a judicial tribunal against some person" charged with a crime]; Black's Law Dict. (5th ed. 1979) p. 1083; Evid. Code, § 901.)

Broadly, it means "All the steps or measures adopted in the prosecution or defense of an action." (Black's, *supra,* p. 1083.) "The word 'proceeding' or 'proceedings' in its general sense refers to the form and manner of conducting judicial business before a court or judicial officer. [Citations.] It may also refer to a mere procedural step that is part of the larger action or special proceeding. [Citation.]" (*Lister* v. *Superior Court* (1979) 98 Cal.App.3d 64, 70 [159 Cal.Rptr. 280]. See *Rooney* v. *Vermont Investment Corp.* (1973) 10 Cal.3d 351, 367 [110 Cal.Rptr. 353, 515 P.2d 297]; *Aldrich* v. *San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725, 742 [216 Cal.Rptr. 300].)

A line of cases has construed the term "proceeding" in section 473 broadly.[2] In *Stonesifer* v. *Kilburn* (1892) 94 Cal. 33 [29 P. 332], the court stated at page 43: "In [citation], it is said: 'The word [proceeding] is generally applicable to any step taken by a suitor to obtain the interposition or action of a court.' [¶] In [citation], the court said: 'The term "proceeding" is generally applicable to any step taken by a party in the progress of a civil action. Anything done from the commencement to the termination is a proceeding.' [¶] In this case respondents objected to a settlement of appellants' bill of exceptions, and moved the court to disregard it, on the ground that it was not filed within the stipulated time. These were steps taken in the action 'to obtain the interposition or action of the court,' which, according to the cases cited, amounted to a proceeding against the appellants, even within the letter and certainly within the spirit of section 473 . . . ."

---

[2]"Proceeding" is not defined in the Code of Civil Procedure. (Cf. §§ 23 [defining "special proceeding"; 595.1 ["proceeding in a court" under section 595 is "any discovery proceeding, pretrial conference, deposition, interrogatory, or any other proceeding arising out of a pending civil action."].)

In *Burns* v. *Superior Court* (1903) 140 Cal. 1 [73 P. 597], the court noted at pages 5-6: "In section 473 . . . and in similar statutory provisions of other states, it has a broader signification, and includes any step taken in a case, whether by the court or by one of the parties thereto. (*Stonesifer* v. *Kilburn*, 94 Cal. 43 [].)" (Cited with approval in *Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 43-44 [210 Cal.Rptr. 762, 694 P.2d 1134] [conc. opn. of Bird, C. J.]; *Gipe* v. *Superior Court* (1981) 124 Cal.App.3d 617, 626 [177 Cal.Rptr. 590]; *Marblehead L. Co.* v. *Superior Court* (1923) 60 Cal.App. 644, 655-656 [213 P. 718].)

Without more, section 473 would apply to discovery demands generally, as a discovery demand is a "step taken in a case . . . by one of the parties thereto" (*Burns, supra,* 140 Cal. at p. 5), and the Legislature is presumptively aware of this interpretation of section 473. (*Walters* v. *Weed* (1988) 45 Cal.3d 1, 10 [246 Cal.Rptr. 5, 752 P.2d 443]; *Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874].) To prohibit application of section 473 to discovery matters, it could have expressed in the discovery act that relief under section 473 was unavailable. It did not. However, in several sections of the discovery act the Legislature provided for relief by using language similar to section 473. Section 2034, subdivision (k) is concerned with the exchange of expert trial witnesses. That section, however, provides only for augmentation or amendment, upon motion, of a party's expert witness list upon a showing of "mistake, inadvertence, surprise, or excusable neglect." The relief sought herein is not encompassed by that section. The relief provided by section 2034, subdivision (k) is narrowly limited to adding new names of "subsequently retained" experts and amending the declaration of the expert witness's expected testimony. The showing required for relief under this section is more onerous than that required for relief under section 473. Prerequisites to relief are a previous timely exchange of expert witnesses, service of the motion in time to permit the taking of depositions of the expert before the discovery cutoff date, except in exceptional circumstances, and lack of prejudice to the opposing parties by such amendment or augmentation. The moving party must demonstrate that in the exercise of reasonable diligence such party could not determine to call the omitted witness or to offer additional or testimony *or* failed to determine to call the expert witness or offer further testimony "as a result of mistake, inadvertence, surprise or excusable neglect."

Similarly, section 2031, subdivision (k) provides relief from failure to respond to an inspection demand, upon motion, when such failure was the result of "mistake, inadvertence or excusable neglect." Again, the party seeking relief must satisfy more requirements than one seeking relief under section 473. A response that is in substantial compliance with the inspection

demand must be served subsequent to the time expiration for a timely response.

Section 2033, subdivisions (k), (m), relating to the failure to respond to a request for admissions or the amendment or withdrawal of such admissions likewise provides relief to the responding party if the error or omission resulted from "mistake, inadvertence, or excusable neglect."

█ When the Legislature uses language which has received definitive judicial construction we presume it intended to adopt that construction. *(Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 675 [254 Cal.Rptr. 211, 765 P.2d 373].) █ Further, the Legislature's use of section 473 language in parts of the discovery act evidences its intent to supplant the application of section 473 pro tanto. In *City of Fresno* v. *Superior Court* (1988) 205 Cal.App.3d 1459 [253 Cal.Rptr. 296], the defendant city failed to respond to an inspection demand. The city moved for relief from waiver of objections under section 2031, subdivision (k), providing for relief if a party substantially complies with the demand and the untimeliness of the response is a result of "mistake, inadvertence, or excusable neglect." The court noted at page 1467, "The discovery act was the product of the State Bar-Judicial Council Joint Commission on Discovery. In the reporter's notes on the joint commission's efforts, the following was written with regard to the relief provision: 'The subdivision then brings over from CCP § 473 the court's power to relieve one from that waiver under the circumstances set forth in the proposed subdivision. It is the intent of the Commission that henceforth this subdivision, and not CCP § 473, will apply to this form of discovery default.' (State Bar-Judicial Council J. Com. on Discovery (1986) Proposed Cal. Civil Discovery Act of 1986, p. 83.)"

We agree with *City of Fresno, supra,* 205 Cal.App.3d 1459, that the Legislature intended to incorporate the principles of section 473 into those provisions of the discovery act which employ similar language. Relief under section 473 is unavailable when the discovery act provides analogous, if more limited, relief. As nothing in the section governing expert witness disclosure provides for relief from failure to file a timely demand for exchange of expert trial witnesses information, relief is available under section 473. In this case the court was authorized to grant relief under section 473.

## II. THE ORDER COMPELLING DISCLOSURE

█ To determine if relief under section 473 was properly granted, we apply the abuse of discretion standard. (See *City of Ontario* v. *Superior Court* (1970) 2 Cal.3d 335, 347-348 [85 Cal.Rptr. 149, 466 P.2d 693].) But discretion is always delimited by the statutes governing the particular issue.

(See *City of Sacramento* v. *Drew* (1989) 207 Cal.App.3d 1287, 1297-1298 [255 Cal.Rptr. 704].) ▪ A motion for relief under section 473 could be granted in a discovery proceeding only if the facts satisfied the grounds for relief stated in the discovery act. For example, "[O]n motion and for good cause shown, the court may establish the sequence and timing of discovery for the convenience of parties and witnesses and in the interests of justice." (§ 2019, subd. (c).) "On motion of any party, the court may grant leave to complete discovery proceedings, . . . closer to the initial trial date . . . ." (§ 2024, subd. (e).) More particularly subdivision (c) of section 2034 states "The specified date of exchange shall be 50 days before the initial trial date, or 20 days after service of the demand, whichever is closer to the trial date, *unless the court, on motion and a showing of good cause, orders an earlier or later date of exchange.*" (Italics added.) This section gave the court authority to change the date of the exchange for good cause.

▪ Zellerino argues the demand was "void" because it was untimely and "internally defective," in that it specified an erroneous exchange date, and no order of the court could "revive" it. Zellerino's reliance on *St. Vincent Medical Center* v. *Superior Court* (1984) 160 Cal.App.3d 1030 [206 Cal.Rptr. 840] is unavailing. That case arose under the prior discovery law and held that a court could not impose stricter deadlines for service of a demand than those contemplated by the former statute. (*Id.* at pp. 1033-1034.) The issue is not whether the court could change the date of the *demand*, but whether it could change the date of the *exchange*. The new statute gives the court flexibility to order "an earlier or later date of the exchange of expert information on motion for good cause." (§ 2034, subd. (c)[¶ 2]; 2 Cal. Civil Discovery Practice (Cont.Ed.Bar 1988) Exchange of Expert Information, § 12:6, p. 784, hereafter *CEB*; 2 *Weil & Brown*, ¶ 8:1657, p. 8J-7; Kennedy, Cal. Expert Witness Guide (2d ed. 1991) § 10.43, p. 292, hereafter *Kennedy*.)

While section 2034, subdivision (a) permits a demand for expert disclosure "after" the trial date is set, the statute does not state that an "internally defective" demand cannot be amended. The very authority cited by Zellerino holds that while there is no *right* to discovery if the demand is premature, "Arguably, if '*exceptional circumstances*' are shown, the court should be able to compel disclosure of opposing experts at *any* time by granting a *protective order* against use of their testimony at trial unless presently disclosed [citation]." (2 *Weil & Brown*, ¶ 8:1644, p. 8J-5, italics in original.)

The facts underlying the court's exercise of discretion in the instant case are for the most part uncontroverted. Further, "[w]hen disputed facts provide a basis for the exercise of discretion, those facts should be liberally construed in favor of discovery[.]" (*Greyhound Corp.* v. *Superior Court* (1961)

56 Cal.2d 355, 383 [15 Cal.Rptr. 90, 364 P.2d 266].) In this case the declarations establish the Regents' mistake was innocent and the steps they took to correct it were reasonable. Counsel for the Regents attempted to reach an informal accord among all parties as to the proper date of the exchange. When that failed, the Regents promptly moved for relief from their mistake.

Another significant factor is the lack of any prejudice to Zellerino. In her reply brief Zellerino urges the relief granted Brown and the Regents "severely mutilated the existing rights of Appellant who (unlike Regents) was guilty of neither mistake or [sic] default." Zellerino made no showing of prejudice arising from the court order compelling discovery on November 20. "Prejudice" does not mean a result which is unfavorable, it means a result which is unfair. (See, e.g., *Dickison* v. *Howen* (1990) 220 Cal.App.3d 1471, 1478-1480 [270 Cal.Rptr. 188]; *Williams* v. *Volkswagenwerk Aktiengesellschaft* (1986) 180 Cal.App.3d 1244, 1256-1261 [226 Cal.Rptr. 306].) The importance of discovery of experts is manifest in a case like this. Defendants had no idea what type of malpractice would be claimed at trial, which was set over five years from the date of the complaint. The potential for unfair surprise was great. On appeal Zellerino urges "there is no inherent unfairness in both sides being ignorant of the other's expert testimony. If anything, the weight of disadvantage, other things being equal, is on Plaintiff who has the initial burden of proof and persuasion." However, one purpose of discovery is to facilitate settlement, but Zellerino asserted in her letter that it was the position of Brown that there could be no settlement "until they saw the whites of our eyes, to wit, whether plaintiff had expert witnesses." Zellerino's failure to engage an expert prevented any attempt at settlement and reflects an arrogant disregard of the court system. The order was properly designed to facilitate the purposes of discovery: fair and efficient disclosure to encourage settlement and clarify issues for trial. (See *Greyhound Corp.*, *supra*, 56 Cal.2d at p. 376.)

The showing made on the motion for relief under section 473 satisfies the "good cause" requirements of the discovery act. (§ 2034, subd. (c).) The court did not abuse its discretion in fashioning its relief under the aegis of section 473.

Moreover, the method Zellerino should have employed was to attack the untimely demand with a prompt motion for a protective order. She contends such a procedure is "optional." She errs.

Section 2034, subdivision (e) provides in part:

"A party who has been served with a demand to exchange information concerning expert trial witnesses may promptly move for a protective order.

This motion shall be accompanied by a declaration stating facts showing a reasonable and good faith attempt at an informal resolution of each issue presented by the motion.

"The court, for good cause shown, may make any order that justice requires to protect any party from unwarranted annoyance, embarrassment, oppression, or undue burden and expense. The protective order may include, but is not limited to, one or more of the following directions:

"(1)   That the demand be quashed because it was not timely served.

"(2)   That the date of exchange be earlier or later than that specified in the demand."

There is no provision in section 2034 for a party to file an "objection" to a demand for exchange of experts. Zellerino urges that the word "may" "imports permission, ability, possibility, or contingency" (*Santa Cruz R. P. Co.* v. *Heaton* (1894) 105 Cal. 162, 165 [38 P. 693]; see *Common Cause* v. *Board of Supervisors* (1989) 49 Cal.3d 432, 443 [261 Cal.Rptr. 574, 777 P.2d 610]) and, though a party "may" move for a protective order, the party may also pursue other avenues of protest, including the filing of an objection. She asserts that she "registered her formal objection which is all that is reasonably required of any litigant when faced with discovery abuse." Several factors militate against the validity of Zellerino's assertion.

First, the statute at issue provides that a party who is served with a demand "may *promptly* move for a protective order." (§ 2034, subd. (e), italics added.) As the statute has no provision for the filing of an objection, an objection, if permitted, could be made at any time, which is not conducive to the smooth flow of discovery.

Second, an objection carries none of the procedural disincentives built into the protective order motion, which follows a good faith effort at resolving the dispute. (§ 2034, subd. (e)[¶ 1].) Since the loser will normally suffer monetary sanctions (§ 2034, subd. (e)[¶ 4]), a party will move for a protective order only when he or she perceives a significant benefit will result, as when he or she will be prejudiced by the untimeliness of the demand. (See *Mattco Forge, Inc.* v. *Arthur Young & Co.* (1990) 223 Cal.App.3d 1429, 1441 [273 Cal.Rptr. 262]; 2 *CEB*, § 13.115, pp. 898-899; 2 *Weil & Brown*, ¶ 8:1655.1, p. 8J-7; 1 Hogan, Modern Cal. Discovery (4th ed. 1988) Discovery in Civil Cases, § 10.4, p. 624, hereafter *Hogan*.) The deterrence provided by the threat of sanctions for an unjustified motion for a protective order promotes broad discovery and minimizes court intervention. An objection, as envisioned by Zellerino, may be made with impunity.

Third, a principal feature of the discovery act is that most discovery requests are self-executing (*ibid.*; see also, 2 *Weil & Brown*, ¶ 8:23, p. 8B-1), and do not consume court time. A mere "objection" does nothing but invite a motion to compel. (2 *CEB*, § 13.114, pp. 897-898.) A motion for a protective order puts the burden on the objector to establish why a particular request need not be complied with, and "should not be made unless the party making, and the party opposing, the protection sought have made a reasonable and good faith attempt to resolve the issues involved in an informal manner. The motion must be accompanied by a declaration detailing the steps that have been taken by counsel in an effort to resolve these issues *before troubling the court to do so*." (1 *Hogan*, § 10.16, p. 650, italics added.) Here, Zellerino made no attempt to resolve the dispute (cf. 2 *CEB*, § 12:17, p. 795), instead treating the issue as some sort of tactical windfall.

Fourth, a motion for a protective order permits the court "for good cause shown" to "make any order that justice requires to protect any party . . . ." (§ 2034, subd. (e).) Such an order must be made "to protect any party from unwarranted annoyance, embarrassment, oppression, or undue burden and expense." (§ 2034, subd. (e).) Thus, in deciding whether or not to grant the order, and on what terms, the court can fashion particularized relief for each case. One of the particular statutory examples of a protective order is "That the demand be quashed because it was not timely served." (§ 2034, subd. (e)(1).) A demand may be quashed if a party will be prejudiced by its untimeliness. This broad authority speeds up the discovery process, to the end of doing substantial justice between the parties in each case.

It is a recurring theme in Zellerino's briefs that an objection to a demand for the exchange of experts on the ground it is untimely per se invalidates the demand and the court had no power to revive a "void" or "defective" demand. However, under the statute a ground for a protective order is the untimeliness of a demand. Zellerino's argument effectively reads this provision out of the statute, since if a party can void a demand *ab initio* on the ground it was untimely there would be no reason ever to move for a protective order. "An interpretation which gives effect is preferred to one which makes void." (Civ. Code, § 3541.) " 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose[]' [citation]; 'a construction making some words surplusage is to be avoided.' " (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) If an objection could be used to invalidate a demand the purpose of the statute to permit relief in the form of a protective order would be frustrated. (See *Greyhound Corp., supra*, 56 Cal.2d at p. 383 [purposes of discovery act "are to be given effect rather than thwarted, to the end that discovery is encouraged"].)

Fifth, the Legislature has provided that objections may be made to defective deposition notices (§ 2025, subd. (g)), questions at a deposition which impinge on a privilege or on protected attorney work product (§§ 2025, subd. (m) [oral deposition], 2028, subd. (d) [written deposition]), demands for inspection (§ 2031, subd. (f)), demands for physical or mental exams of party (§ 2032, subd. (c)(5)-(6)) and requests for admissions (§ 2033, subd. (f)). (See generally 4 Cal. Practice, § 20:306, pp. 438-440 [listing permissible objections].) The Legislature did not provide for objections to demands for exchanges of experts. " '[W]hen the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded.' " (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 725 [257 Cal.Rptr. 708, 771 P.2d 406].)

Sixth, the members of the bar generally assume that a protective order is the only way to challenge a demand for an exchange of experts. Each of the standard treatises on discovery describe the procedure for obtaining a protective order once a demand for exchange of experts has been made: None mentions the possibility of filing an objection. (3 *DeMeo*, § 64.20, p. 64-13; 2 *Weil & Brown*, ¶¶ 8:1654-1658, pp. 8J:6-7; 1 *Hogan*, § 10.4, pp. 624-625; *Kennedy*, § 10.43, p. 293; 2 *CEB*, § 12.17, pp. 795-796, § 13.114, pp. 897-898; 2 Cal. Civ. Actions: Pleading and Practice (1987) Discovery, § 34:152, p. 34-291; 4B Cal. Forms of Pleading and Practice (1991) Expert Witnesses, Form 356, pp. VIII:42-45; 6 Cal. Points and Authorities (1991) Expert Trial Witnesses, Form 600, pp. 764.1-767.) The universal lack of discussion of objections among commentators and practitioners reinforces our view that the absence of a specific provision in section 2034 authorizing the filing of an objection to an expert witness demand means that such procedure is not contemplated by the statute.

In her reply brief Zellerino urges she did not "waive" her "right" to object to the demand by failing to move for a protective order. She urges that "where waiver is intended as a consequence, the Code specifies such penalty," citing various unrelated sections of the act (viz., §§ 2032, subd. (d)(2), 2030, subd. (g), 2031, subd. (k), 2032, subd. (c)(6)). To the extent we understand this undeveloped argument, we believe Zellerino misses the point, which is not that she "waived" her right to object, but that she failed to "object" in the proper manner.

III. THE IN LIMINE MOTION TO EXCLUDE EXPERT WITNESS TESTIMONY

Six weeks after the discovery order Zellerino sent defense counsel a letter dated December 28 naming two experts and stating "Because of the shortness of time, [they] will [not] be able to attend any deposition prior to their

trial testimony, so please don't ask." Zellerino mailed her list of 13 experts on January 2, 1990, 6 days before trial. Seven of the experts were defendants' experts. Zellerino provided the required declaration "of the general substance of the testimony that the expert is to give" (§ 2034, subd. (f)(2)(B)) only as to the two she had retained. No reports or writings (§ 2034, subd. (g)), were provided.

■ The defense motion for an *in limine* motion to prevent Zellerino from introducing expert testimony was granted. On appeal, Zellerino urges the defendants were not entitled to make an *in limine* motion and that the court abused its discretion in granting the motion. We conclude the defendants were entitled to make the motion, the statutory requirements for an order excluding testimony were met and the trial court did not abuse its discretion.

The basis for Zellerino's assertion that neither Brown nor the Regents were entitled to move for exclusion of testimony was that they were not themselves in compliance with the discovery order and section 2034, subdivision (j) provides a party may move for exclusion only if he or she "has made a complete and timely compliance with subdivision (f)[.]" The first sentence of subdivision (f) of section 2034 states "All parties who have appeared in the action shall exchange information concerning expert witnesses in writing on or before the date of exchange specified in the demand."

Zellerino conceded below that both Brown and the Regents exchanged the necessary information on November 20. She urges that since the date of exchange *listed in the demand* was October 26, both Brown and the Regents made untimely disclosures. We disagree. For the reasons set forth earlier in this opinion, the trial court was authorized to change the date of the exchange. The date it selected was November 20. The only party who did not meet that deadline was Zellerino.

## A. THE APPLICABLE SANCTIONS STATUTES

The general sanction statute (§ 2023, subd. (a)), lists as examples of "Misuses of the discovery process:"

"(2) Using a discovery method in a manner that does not comply with its specified procedures.

". . . . . . . . . . . . . . . . . . . . . . . .

"(7) Disobeying a court order to provide discovery.

"...................................................................

"(9)  Failing to confer . . . in a reasonable and good faith attempt to resolve informally any dispute concerning discovery [where the statute] requires the filing of a declaration stating facts showing that such an attempt has been made."

Zellerino's conduct fits within each of these categories. She failed to file a motion to submit tardy expert witness information and thus failed to comply with specified procedures. She disobeyed a court order to provide discovery. She failed to make an informal attempt to resolve the question of the untimely demand, (§ 2034, subd. (e); 1 *Hogan*, § 10:16, p. 650), and filed her "objection." The suggestion in Zellerino's brief that this objection was an "informal" attempt to resolve the dispute is absurd, as evidenced by the next page of her brief wherein she describes it as a "formal" objection. She misused the discovery process.

Section 2023, subdivision (b)(3) provides: "To the extent authorized by the section governing any particular discovery method or any other provision of this article, the court . . . may impose the following sanctions [for misuse of the discovery process]: . . . The court may impose an evidence sanction by an order prohibiting any party engaging in the misuse of the discovery process from introducing designated matters in evidence."

Section 2023, subdivision (b) limits the permissible sanctions to those "authorized by the section governing any particular discovery method." Section 2034, subdivision (j), states:

"[O]n objection of any party who has made a complete and timely compliance with subdivision (f) [i.e., who has disclosed its experts], the trial court shall exclude from evidence the expert opinion of any witness that is offered by any party who has unreasonably failed to do any of the following:

"(1)  List that witness as an expert[.]

"(2)  Submit an expert witness declaration.

"(3)  Produce reports and writings of [the] expert[.]

"(4)  Make that expert available for a deposition[.]"

Brown and the Regents urge Zellerino failed to comply with any of these four requirements. While the exclusion of expert testimony is permissible if a party unreasonably fails to fulfill "any" one of the above four obligations,

in this case we conclude Zellerino failed to comply with all four of the requirements.

## B. Failure to Comply With the Disclosure Requirements

1. Zellerino's acts constituted failure to list witnesses (§ 2034, subd. (j)(1)), in that she sought no stay of the discovery order in the trial court. (See *In re Marriage of Niklas* (1989) 211 Cal.App.3d 28, 34-35 [258 Cal. Rptr. 921]; *Sauer* v. *Superior Court* (1987) 195 Cal.App.3d 213, 229 [240 Cal.Rptr. 489].) She declined to comply with the court order through the December 21 settlement conference, thus rendering that conference meaningless. When she finally did comply, she failed to make a motion for late compliance.

Zellerino boldly urges that as she had not retained any experts by November 20 she was incapable of complying with the court order. We observe initially that this inability was due solely to Zellerino's failure to timely process her lawsuit and secure experts in a timely fashion.

Moreover, when Zellerino was ordered to exchange expert witness *lists* with the other parties on November 20, she could have provided the other parties with a document, properly captioned, disclosing that she had no experts. Section 2034, subdivision (f)(1) provides for this possibility: "The exchange of expert witness information shall include *either* of the following: [¶] (A) A list setting forth the name and address of any person whose expert opinion that party expects to offer in evidence at the trial. (B) A statement that the party does not presently intend to offer the testimony of any expert witness." (Italics added; see *Kennedy*, § 10.63, pp. 323-324 [providing form for disclosure of lack of mention to offer expert testimony].) If and when any experts were retained, Zellerino would have been in a position to move for leave to submit tardy information. (§ 2034, subd. (1); 2 *CEB*, § 12:19, pp. 798-799.) Relief under section 2034, subdivision (1) would be within the broad discretion of the trial court. (See *Dickison* v. *Howen, supra,* 220 Cal.App.3d at p. 1476 [motion to augment expert list]; *Sprague* v. *Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1039 [213 Cal.Rptr. 69] [same, under prior law].) If the court found Zellerino's failure to list her experts was reasonable, it would not have excluded their testimony.

Zellerino's real complaint appears to be that the discovery act does not permit a party to conceal a vacuum in its case. What she seeks is a return to cat-and-mouse discovery, where each side tries, as do Tom and Jerry, to sandbag the other. We eschew any construction of the discovery statutes which would lead to this absurd result. (*Lungren* v. *Deukmejian* (1988) 45

Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; *People* v. *Catelli* (1991) 227 Cal.App.3d 1434, 1451 [278 Cal.Rptr. 452].)

2. Brown and the Regents urge Zellerino failed to supply the required declarations "of the general substance of the testimony that the expert is expected to give" (§ 2034, subd. (f)(2)(B)) of each of the experts. We agree. Zellerino did supply declarations as to the two experts she retained. The statute provides "If any witness on the list is an expert as described in paragraph (2) of subdivision (a), the exchange shall also include or be accompanied by an expert witness declaration signed only by the attorney for the party *designating* the expert, or by that party if that party has no attorney. (§ 2034, subd. (f)(2), italics added.) In turn, paragraph (2) of subdivision (a) states: "If any expert *designated* by a party under paragraph (1) is a party or an employee of a party, or has been retained by a party for the purpose of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action, the *designation* of that witness shall include or be accompanied by an expert witness declaration under paragraph (2) of subdivision (f)." (Italics added.)

We emphasize the words "designating," "designated" and "designation" because the need for a declaration is based on the designation of an expert, not the retention of an expert. The designation occurs when a party lists an expert "whose . . . testimony in the form of an expert opinion any party expects to offer in evidence at the trial." (§ 2034, subd. (a)(1).) "An expert witness declaration is required for each expert 'retained by *a* party' . . . not necessarily the designating party. Thus, if the designating party intends to rely on experts produced by *other parties* (e.g., codefendants), he or she must furnish an expert witness declaration for those experts." (2 *Weil & Brown*, ¶ 8:1668.1, p. 8J-9; see also 2 *CEB*, § 12:12, p. 789.) By listing the experts of her opponent Zellerino assumed the burden of providing declarations regarding the expected expert testimony. While it is true that no declarations need be supplied as to experts testifying as percipient witnesses (*Hurtado* v. *Western Medical Center* (1990) 222 Cal.App.3d 1198, 1203 [272 Cal.Rptr. 324]), Zellerino did not identify any of her proposed experts as percipient witnesses.

3. The reports of the witnesses (§ 2034, subd. (j)(3)), are to be provided only if "made by any expert [retained by a party] in the course of preparing that expert's opinion." (§ 2034, subds. (a)(3), (g).) It does appear that Zellerino failed to list a discoverable report of one expert, which is in the record. It is dated January 2, 1990, and was filed with the trial court on January 8, 1990, the date of trial. There is no indication in the record when Zellerino's attorney received the report, but even if Zellerino did not receive the report until the date of trial, she did not file this report as part of a motion

for leave to submit tardy information. "Last minute tender of documents does not cure the prejudice to opponents, nor does it restore to other litigants on a crowded docket the opportunity to use the courts." (2 *DeMeo*, § 42.03[2][c], pp. 42:11-12, fn. omitted.)

4. Finally, Zellerino not only failed to make her experts available for deposition (§ 2034, subd. (j)(4)), she told counsel not to bother *asking* to take depositions. As the court noted, it was even possible for Brown and the Regents to depose the experts during trial, but Zellerino's only offer was for the defendants to waive the five-year statute, an offer the court deemed "patently unreasonable."

Given the near-total failure to comply with the requirements of the statute, we conclude the order preventing Zellerino from introducing expert testimony was within the court's discretion, even though the effect was that it terminated her lawsuit. Section 2034, subdivision (f)(2)(B) requires that a party served with a demand give a brief statement of the substance of the testimony that the expert will give. Once a party designates an expert witness, that expert may be deposed (§ 2034, subd. (i)). The designation of an expert both informs all parties of the nature of his or her testimony and permits application of discovery of that the expert's testimony through oral and written depositions. (§ 2034, subd. (i).) In actions requiring expert testimony, "the need for pretrial discovery is greater with respect to expert witnesses than it is in the case of ordinary fact witnesses. If a party is going to present the testimony of experts during the trial, the other parties must prepare to cope with the testimony to be given by people with specialized knowledge in a scientific or technical field." (1 *Hogan*, § 10.1, p. 615, fn. omitted; see 2 *Weil & Brown*, ¶ 8:1625, p. 8J-1.)

These requirements "are doubtless aimed at eradicating the practice of submitting long lists of experts, none of whom have actually yet been retained, or even contacted by the party designating them." (1 *Hogan*, § 10.6, pp. 628-629.) To effect this and other purposes the statute permits a trial court to exclude the testimony of experts when a party has failed to comply with each of the provisions of section 2034, subdivision (j.) (See *Kennedy* v. *Modesto City Hospital* (1990) 221 Cal.App.3d 575, 580 [270 Cal.Rptr. 544]; Cal. Judges Benchbook Civil Trials (CJER 1990 Supp.) Witnesses, § 8.58, p. 69.)

Zellerino failed to comply with any of the requirements of the expert disclosure statute thereby frustrating the purposes of the discovery act. Her actions were not mere infractions. The record discloses a comprehensive attempt to thwart the opposition from legitimate and necessary discovery. Zellerino's conduct prejudiced the defense, which did not have the ability to

counter the testimony of the belatedly disclosed experts. The trial court properly granted the in limine motion.

### DISPOSITION

The judgment is affirmed.

Davis, J., and Nicholson, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 20, 1992. Mosk, J., was of the opinion that the petition should be granted.