[No. B114112. Second Dist., Div. Four. Nov. 18, 1997.]

SCOTTSDALE INSURANCE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
SPYGLASS HOMEOWNERS ASSOCIATION, Real Party in Interest.

**COUNSEL**

Ramon Z. Bacerdo and Sterling Tao for Petitioner.

No appearance for Respondent.

Callahan & Blaine, Daniel J. Callahan, Edward Susolik and Shawn E. Cowles for Real Party in Interest.

**OPINION**

**HASTINGS, J.**—Plaintiff and petitioner, Scottsdale Insurance Company (Scottsdale), challenges an order compelling it to produce documents which it asserts fall within the attorney-client privilege. Directly at issue in this proceeding is application of subdivisions (f) and (k) of Code of Civil

Procedure section 2031,[1] part of the Civil Discovery Act of 1986 (§ 2016 et seq.). As pertinent, these sections state:

"(f) The party to whom an inspection demand has been directed shall respond separately to each item or category of item by a statement that the party will comply with the particular demand for inspection and any related activities, a representation that the party lacks the ability to comply with the demand for inspection of a particular item or category of item, or an objection to the particular demand.

". . . . . . . . . . . . . . . . . ". . . . . . . .

"(3) If only part of an item or category of item in an inspection demand is objectionable, the response shall contain a statement of compliance, or a representation of inability to comply with respect to the remainder of that item or category. If the responding party objects to the demand for inspection of an item or category of item, the response shall (A) identify with particularity any document, tangible thing, or land falling within any category of item in the demand to which an objection is being made, and (B) set forth clearly the extent of, and the specific ground for, the objection. If an objection is based on a claim of privilege, the particular privilege invoked shall be stated. . . .

". . . . . . . . . . . . . . . . . ". . . . . . . .

"(k) If a party to whom an inspection demand has been directed fails to serve a timely response to it, that party waives any objection to the demand, including one based on privilege or on the protection for work product under Section 2018. However, the court, on motion, may relieve that party from this waiver on its determination that (1) the party has subsequently served a response that is in substantial compliance with subdivision (f), and (2) the party's failure to serve a timely response was the result of mistake, inadvertence, or excusable neglect."

After review of the record, we conclude that Scottsdale has waived its attorney-client privilege with respect to the documents ordered to be produced and that the trial court did not abuse its discretion in denying relief pursuant to section 2031, subdivision (k).

### FACTS

Scottsdale's action for declaratory relief seeks, inter alia, a declaration whether coverage exists in favor of real party in interest, Spyglass Homeowners Association (Spyglass), for a landslide which occurred in 1993.

---

[1]All further statutory references will be to the Code of Civil Procedure unless otherwise noted.

Spyglass was not originally a party to the underlying action but was added by amendment on January 29, 1997. Spyglass filed a responsive pleading on April 3, 1997.

On January 29, 1997, Scottdale's counsel declared in response to a request by the court regarding the status of the case: "Once Spyglass has made an appearance in the action, Scottsdale plans to immediately file a motion for summary judgment or, in the alternative, for summary adjudication, against Spyglass as early as allowed by California Code of Civil Procedure, Section 437c. Therefore, Scottsdale expects to have its motion for summary judgment/summary adjudication heard by this Court as early as April, 1997."

Realizing that time was of the essence, Edward Susolik (Susolik), counsel for Spyglass, served six demands for production of documents on Scottsdale on March 14, 1997. The second demand or "set" is at issue in this proceeding. It sought documents relating to a specific "claim" which is described as follows: " 'Claim' means the claim or claims arising out of the February 1993 landslide at the Spyglass development, including the action entitled *Jack Stoughton, et al* v. *Spyglass Homeowners Association*, LASC Case No. BC 099064, which claim or claims were tendered for insurance coverage to [Scottsdale] on behalf of Spyglass Homeowners Association."

There were 34 separate items listed in the request but essentially Spyglass sought the following: the claims file and all documents or electronic data reflecting or referring to the claims file, the *adjustment* of the claim, the *handling* of the claim, and any *investigation* done on the claim (items 22-32); documents or electronic data referring to or reflecting Spyglass Homeowners Association, the *Stoughton* action and the slope failure at issue in the *Stoughton* action (items 33-36, 43 and 44); documents or electronic data relating to an action titled *Spyglass Homeowners Association* v. *Northwest Whittier Properties* which involved a slope failure in 1978, including documents or electronic data relating to settlement and payment of fees, costs and indemnity of the action (items 37-40 and 45-55); and documents or electronic data relating to an action titled *Citizens Savings & Loan* v. *Upland Industries* (items 41 and 42).

On April 2, 1997, Scottsdale served on Spyglass an unverified response to set number 2 with the following objections:

"RESPONSE TO DEMAND FOR PRODUCTION NO. 22-46:

"Objection: Spyglass' Demand for Production of Documents and Things in its entirety is excessive in that the number of categories of documents

requested (173)[2] is overbroad, oppressive and burdensome, and Spyglass does not have 'good cause' to request such an excessive number of documents as mandated by California Code of Civil Procedure Section 2031.

"Objection: These requests are overbroad, oppressive and burdensome as phrased.

"RESPONSE TO DEMAND FOR PRODUCTION No. 47-50:

"Objection: Spyglass' Demand for Production of Documents and Things in its entirety is excessive in that the number of categories of documents requested (173) is overbroad, oppressive and burdensome, and Spyglass does not have 'good cause' to request such an excessive number of documents as mandated by California Code of Civil Procedure Section 2031.

"Objection: This discovery may fall within the scope of Scottsdale's motion for protective order which is set to be heard on April 2, 1997, and may therefore be subject to the jurisdiction of a discovery referee."[3]

On April 9, 1997, Susolik wrote a "meet and confer" letter to counsel for Scottsdale, Sterling Tao (Tao). Citing Code of Civil Procedure section 2031, subdivision (f), Susolik contended that all objections other than those asserted in the response were waived. He also urged that the objections asserted were meritless and that good cause existed for production of the documents sought. He pointed out that Tao had advised in his declaration of January 29 that Scottsdale intended to file a motion for summary judgment as soon as possible and that the categories of items requested were directly relevant to the issue of duty to defend Spyglass in the *Stoughton* action.

On April 15, 1997, Tao replied to the letter from Susolik. First, relying upon section 2031, subdivision (k), he asserted that because a timely response had been filed, objections not asserted in the response were preserved. He conceded that the objection based on the protective order must be withdrawn because the court had denied the protective order, but he argued that the other objections had merit. He then stated: "On pages six and seven of your meet-and-confer correspondence, Spyglass seeks copies of the claim file, facts involving the claim, and defense costs paid by Scottsdale." "Scottsdale shall provide copies of these documents, *exempting documents protected by privilege.*" (Italics added.)

---

[2] This number references the total number of categories of items requested in all six sets of requests to produce.

[3] A motion for protective order was scheduled for hearing on April 2, 1997, wherein Scottsdale requested an order that discovery propounded by another defendant, Aetna Casualty & Surety Co., did not have to be responded to until after the court ruled on Scottsdale's motion for summary judgment against Spyglass.

Susolik responded on May 1, 1997, and advised Tao that "Scottsdale must provide verified Supplemental Responses . . . pursuant to . . . section 2031(f)(1). . . ." He took exception to Tao's claim that Scottsdale had preserved its objections to privileged items but advised Tao that, to the extent Scottsdale did not intend to produce any privileged items, pursuant to section 2031, subdivision (f), it was required to produce a privilege log specifically identifying each item not produced. He requested that the documents Scottsdale intended to produce and the privilege log be produced no later that May 2, 1997.

On June 4, 1997, Susolik agreed Spyglass would not file a motion to compel production of the documents not produced until June 11, 1997. Susolik urged that Scottsdale allow the documents to be viewed in camera, and he suggested "that we pick a date in the immediate future so that this issue will be resolved before Scottsdale files its Motion for Summary Judgment."

On June 11, 1997, Spyglass filed its motion to compel production of the items sought in set No. 2. It urged that Scottsdale's failure specifically to reference an objection based upon privilege waived any claim of attorney-client privilege. Spyglass pointed out that Scottsdale had filed its motion for summary judgment on May 23, 1997, and argued that the documents requested directly related to the issue raised in the motion, the duty to defend. It suggested that, by pursuing summary adjudication while stonewalling discovery, Scottsdale was "[s]eeking to exploit its systematic abuse of the discovery process," and Spyglass requested sanctions.

Scottsdale opposed the motion, again urging that it had preserved any objections regarding privilege by timely filing a response, even though it had not included a specific objection based upon privilege. It also argued that Spyglass had failed to demonstrate good cause for production of the items sought.

On July 3, 1997, the court granted the motion to compel, ordered Scottsdale "to provide further verified responses, without objection," and levied sanctions in the amount of $1,292.

On July 16, 1997, Scottsdale brought an ex parte application for relief from waiver of its attorney-client privilege pursuant to sections 2031, subdivision (k) and 128, subdivision (a). Of interest is Scottsdale's justification for its initial response to the production request:

"On January 22, 1997, Scottsdale was served a request for production of documents by defendant Aetna. In response, Scottsdale filed its motion for a

protective order and requested a stay of discovery. The hearing date on the motion for protective order and discovery stay was set for hearing on April 2, 1997. Prior to the date in which the Court was to rule upon the request for stay of discovery, on March 14, 1997, [Spyglass] served its six (6) separate requests for production of documents numbering <u>173</u> separate category of documents to be produced. As [Scottsdale] awaited the Court ruling on its motion to stay, to preserve its objections, on April <u>1</u>, 1997, [Scottsdale] served its various objections to the documents requested by [Spyglass] as the stay order, if granted, would have necessarily embraced [Spyglass'] served discovery.[4] <u>One day</u> later, on April 2, 1997, the Court denied Scottsdale's motion for Protective Order/Stay Order. Thus [Scottsdale] was instructed to produce the entire claims and underwriting files in the matter of *Stoughton* v. *Spyglass*. These are documents identical to those served by [Spyglass] in its request for documents, set nos. one and two. . . .

"Given the April 2, 1997 denial of [Scottsdale's] motion for protective order, counsel for Scottsdale, traveled to Arizona to review the entirety of the claims and underwriting files in *Stoughton* v. *Spyglass* for production. Following review, it was determined that correspondence by and between Scottsdale and its coverage counsel in the *Scottsdale* v. *General Accident* matter were physically contained in the claims file in the underlying *Stoughton* v. *Spyglass* proceeding."

In other words, the response to set No. 2 was prepared and served before counsel for Scottsdale had even reviewed the documents sought to be produced. This was confirmed by the declaration of Tao filed in support of the application.

Spyglass opposed the ex parte application. It argued that section 2031, subdivision (k) does not apply where a party files a timely response, as did Scottsdale, but fails to list specific objections. It also argued that Scottsdale failed to prove "mistake, inadvertence, or excusable neglect" as required by section 2031, subdivision (k): "In the present case, Scottsdale cannot assert that its failure to assert the critical objection of attorney-client privilege is anything other than inexcusable negligence. As such, Scottsdale is not entitled to relief from the waiver of the attorney-client privilege. [¶] Scottsdale may also be heard to argue that its failure to assert the attorney-client privilege in its timely response was due to the attorney for Scottsdale being 'too busy' at the time when the responses were served. However, an attorney's heavy work load does not serve as a ground for relief from waiver of

---

[4]There is no explanation in the record to suggest how a motion filed before Spyglass became a party to the action on April 3, 1997, and addressed to discovery served by Aetna, could affect the discovery served by Spyglass upon Scottsdale.

the failure to include all objections within an earlier response that was timely served. *City of Fresno* v. *Superior Court* (1988) 205 Cal.App.3d 1459, 1467. . . . See, also, *Lyons* v. *Swope* (1957) 154 Cal.App.2d 598, 600 . . . ('pressure of legal business is not sufficient to invoke . . . section 473.')"

In reply, Scottsdale argued that the mistake at issue was a mistake of law by its counsel. Tao declared in support of this claim as follows:

"4. No Scottsdale representative was involved in the initial preparation of the April 1, 1997 objections filed in response to the six separate requests for production of documents served by [Spyglass].[5]

"5. It was the hope and expectation that the Motion for Protective Order filed by Scottsdale would be granted which would limit the obligation of the parties to address the outstanding discovery matters. When the April 2, 1997 request for protective order was denied, this office indicated it would produce the entire claims and underwriting files by way of meet-and-confer correspondence, less those materials protected by attorney-client privilege.

"6. This office interpreted the waiver provisions of C.C.P. § 2031(k) as the sole grounds upon which a statutory waiver could be made. That provision of C.C.P. § 2031(k) provides: 'If a party to whom inspection demand has been directed and fails to serve a timely response to it, that party waives any objection to the demand, including one based on privilege or on the protection for work product under § 2018.'

"7. This office interpreted the above quoted provisions as providing that waiver would only ensue following an untimely response. This office interprets C.C.P. § 2031(k) as creating a waiver only in those situations where no response is filed within the statutory time period.

"8. It has never been the intent of Scottsdale or its counsel to engage in any gamesmanship or obfuscation, nor was it the intent of counsel for Scottsdale to waive any potential attorney-client privilege."

On July 24, 1997, the court denied Scottsdale's ex parte request and gave Scottsdale "until noon on July 31, 1997 to turn over the documents or to obtain a stay pending a writ." Notice of ruling was served on the same date.

On July 30, 1997, Scottsdale filed its "Petition for Writ of Mandate/ Prohibition or other Appropriate Relief" and requested an immediate stay.

---

[5]Thus, not only did counsel not review the documents sought to be produced, he apparently failed to speak to a representative from Scottsdale to ascertain what documents may be subject to the request.

Because the matter involved compelled disclosure of information which potentially fell within the attorney-client privilege, we issued an order to show cause. (*State Farm Fire & Casualty Co.* v. *Superior Court* (1997) 54 Cal.App.4th 625, 637 [62 Cal.Rptr.2d 834].)

## DISCUSSION

### 1. *Waiver*

■ The law in California relating to attorney-client privilege is controlled by statute: "The basic rule, codified in Evidence Code section 911, is that '[e]xcept as otherwise provided by statute: [¶] . . . [¶] (b) No person has a privilege to refuse to disclose any matter or to refuse to produce any writing, object, or other thing.' . . . '[T]he privileges contained in the Evidence Code are *exclusive* and the courts are not free to create new privileges as a matter of judicial policy.' [Citations.]" (*Cloud* v. *Superior Court* (1996) 50 Cal.App.4th 1552, 1558-1559 [58 Cal.Rptr.2d 365].)

The "lawyer-client" privilege is specifically addressed in sections 950 through 962 of the Evidence Code. It is also subject to other, general provisions of the Evidence Code, including section 912, subdivision (a), which states: "Except as otherwise provided in this section, the right of any person to claim a privilege provided by Section 954 (lawyer-client privilege) . . . is waived with respect to a communication protected by such privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to such disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, *including failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege.*" (Italics added.)

■ There is no doubt that the Legislature meant to provide that failure to assert the privilege in response to discovery proceedings is a waiver pursuant to Evidence Code section 912. For example, the Legislature has specifically designated failure to timely assert the privilege as waiver during various discovery modes: Section 2031, subdivision (k), the section at issue here; section 2030, subdivision (k), interrogatories; section 2028, subdivision (d)(2), deposition by written questions; section 2025, subdivision (m), oral deposition; section 2033, subdivision (k), requests for admission.

Scottsdale recognizes these authorities and does not challenge the fact that waiver does occur when there is a *complete* failure to respond to discovery. It urges that section 2031, subdivision (k), must be read to preserve the

attorney-client privilege if *any* response is timely filed, even if no specific objection based on attorney-client privilege is asserted. In response, Spyglass argues that subdivision (k) must be read in connection with subdivision (f) which requires that an objection based on privilege must be made in the *original* response or waiver results. Spyglass's position is persuasive.

■ "We begin with the fundamental rule that a court 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining such intent '[t]he court turns first to the words themselves for the answer.' [Citation.] We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.] 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' [Citation.] '[A] construction making some words surplusage is to be avoided.' [Citation.] 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] *Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole.* [Citations.]" (*Moyer* v. *Workmen's Compensation Appeals Bd.* (1973) 10 Cal.3d 222, 230-231 [110 Cal.Rptr. 144, 514 P.2d 1224], italics added.)

■ In the context of the legislative intent exhibited in the Civil Discovery Act of 1986 (Act), Scottsdale's argument makes no sense. It would allow piecemeal and seriatim doling out of objections to legitimate discovery requests whenever a timely response, no matter how insubstantial, is served. It is clear from the Act that the Legislature intended that any and all objections are to be made at the earliest timely response. For example, section 2025, subdivision (m), dealing with oral depositions, states: "The protection of information from discovery on the ground that it is privileged or that it is protected work product under Section 2018 is waived unless a specific objection to its disclosure is made *during the deposition.*" (Italics added.) This clearly requires an immediate assertion of the privilege at the earliest opportunity.

Courts have concluded that the Legislature requires objections in the initial response to written interrogatories to avoid waiver of privilege. (*Coy* v. *Superior Court* (1962) 58 Cal.2d 210, 216-217 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678]; *Leach* v. *Superior Court* (1980) 111 Cal.App.3d 902, 905 [169 Cal.Rptr. 42].) While *Coy* and *Leach* predate the Act, their holdings are grounded on requirements encompassed by section 2030, subdivision (k). (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial 2 (The Rutter Group 1997) ¶ 8:1101, p. 8F-45, rev. #1, 1996.)

Turning to the language of section 2031, subdivision (f) requires that a response "shall respond separately *to each item or category of item* by a statement that the party will comply with the particular demand . . . a representation that the party lacks the ability to comply . . . , or an objection to the particular demand. [¶] . . . [¶] (3) *If only part of an item or category of item* in an inspection demand is objectionable, the response shall contain a statement of compliance, or a representation of inability to comply with respect to the *remainder* of that item or category. . . . If an objection is based on a claim of privilege, *the particular privilege invoked shall be stated.*" (Italics added.) This language can be construed in only one way: to require a complete response to each and every requested item whether by agreement to produce the item, a statement that the item cannot be produced, or by objection which, if it relies upon privilege, sets forth the particular privilege. Failure to assert the privilege means that no timely response has been served to preserve the privilege. This conclusion is supported by the language of section 2031, subdivision (k) granting the court authority to relieve the party of waiver based upon mistake, inadvertence, or excusable neglect when the party "has subsequently served a response that is in substantial compliance with subdivision (f)."

Scottsdale relies upon *Korea Data Systems Co.* v. *Superior Court* (1997) 51 Cal.App.4th 1513 [59 Cal.Rptr.2d 925] for the proposition that the waiver provision of section 2031 is not absolute. Scottsdale's reliance on *Korea Data* is misplaced. There, a party to the litigation served a timely but nonspecific response, which included " 'general objections based on the attorney/client privilege and the work product doctrine.' " (51 Cal.App.4th at p. 1515.) Despite the fact that the objections were general and nonspecific, the court concluded that because a reference to attorney-client privilege was asserted in the timely response, no waiver of the privilege occurred. The focus of the court was directed to a claim of waiver for failure to timely serve the privilege log, and it concluded: "[N]either section 2031, subdivision (k) nor Evidence Code section 912 authorizes a finding of waiver based on a failure to file a privilege log in a timely manner." (*Id.* at p. 1517.)

We conclude that failure to include an objection expressly based upon attorney-client privilege in the initial response results in waiver of the attorney-client privilege.

### 2. *Relief from waiver*

At the outset, we note that Scottsdale is correct in concluding that its sole remedy for relief from waiver in the context of discovery is contained within the provisions of the Act and it cannot rely upon the provisions of section

473. (*Zellerino* v. *Brown* (1991) 235 Cal.App.3d 1097, 1104 [1 Cal.Rptr.2d 222].) In that regard, there is no comparable language in the Act to that within section 473, which requires mandatory relief when fault is attributable solely to counsel for the party. However, the Legislature did intend that general principles developed in application of section 473 would be utilized in connection with the discretion to be exercised pursuant to the Act. (*City of Fresno* v. *Superior Court* (1988) 205 Cal.App.3d 1459 [253 Cal.Rptr. 296].)

Turning now to section 2031, subdivision (k), we note it allows relief from waiver to a party who has failed to file a timely response if two conditions are met: "(1) the party has subsequently served a response that is in substantial compliance with subdivision (f), and (2) the party's failure to serve a timely response was the result of mistake, inadvertence, or excusable neglect."[6] Here, Scottsdale first served a supplemental response in substantial compliance with section 2031, subdivision (f) when it filed its ex parte application for relief on July 16, 1997. However, Scottsdale did so only after it had opposed the original motion of Spyglass on its merits, and without conceding that it had waived the attorney-client privilege. This raises the inference that Scottsdale sought relief pursuant to subdivision (k) only as an afterthought.

The basis for the relief sought was counsel's alleged mistake of law, supported by the declaration of Tao. He declared he mistakenly had relied upon his belief he would receive a favorable ruling on the motion for protective order brought with regard to the Aetna discovery demand and that he mistakenly construed section 2031, subdivision (k). We disagree that these acts constitute "mistake" sufficient to qualify for relief. Rather, the declaration reflects that Tao made tactical choices which did not yield the results he expected. To the extent that counsel's alleged mistake may have resulted from his negligence, it is not the type of negligence upon which relief can be granted. While it is true that mistake of law on a point which is debatable and unsettled may serve as the basis for relief (*Brochtrup* v. *Intep* (1987) 190 Cal.App.3d 323, 332 [235 Cal.Rptr. 390]), that is not what occurred here. Instead, counsel ignored the clear requirement of section 2031, subdivision (f), that specific responses and objections must be made to each item listed in a request, and chose to file blanket objections. He justified this approach by relying on the potential relief Scottsdale might

---

[6]Spyglass argues that Scottsdale does not qualify within the terms of section 2031, subdivision (k) because it did timely file a response, albeit not a sufficient response to preserve the attorney-client privilege. We disagree. As we noted in the text, section 2031, subdivisions (f) and (k) must be read together. Under their terms, no timely response relating to the attorney-client privilege was served, and the provisions of subdivision (k) are applicable. To construe these statutes otherwise would result in a forfeiture of the attorney-client privilege, not a waiver.

receive from its motion for protective order. There is no suggestion in Scottsdale's argument in opposition to the original motion to compel brought by Spyglass that indicates counsel mistakenly interpreted subdivision (k) and thus failed to assert attorney-client privilege. That issue was not raised until the ex parte application. In fact, Tao's initial declaration in support of the ex parte application suggests just the opposite: He made no attempt to review the documents sought to be produced until after he served the response and after the court denied the motion for protective order. It was only then that he discovered some of the documents within the claim file fell within the attorney-client privilege. Such neglect is inexcusable.

The court did not err in denying relief from waiver.

### DISPOSITION

Writ denied. Costs are to be recovered by Spyglass.

Vogel (C. S.), P. J., and Baron, J., concurred.

Petitioner's application for review by the Supreme Court was denied January 14, 1998.