Filed 5/21/14

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| PATRICK COTTINI, | |
| Plaintiff and Appellant, | C068915 |
| v. | (Super. Ct. No. 143355) |
| ENLOE MEDICAL CENTER, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Butte County, Barbara L. Roberts, Judge. Affirmed.

Bohm Law Group, Lawrance A. Bohm, Bianca N. Saad; Law Offices of Joseph M. Earley III and Joseph M. Earley III for Plaintiff and Appellant.

Horvitz & Levy, Frederic D. Cohen; LaFollette Johnson, DeHaas, Fesler & Ames, Julie Clark Martin and Eric S. Boorstin for Defendant and Respondent.

Plaintiff Patrick Cottini appeals from a judgment entered in favor of Enloe Medical Center (Enloe) after the jury found one or more Enloe employees provided negligent care to Cottini, a dependent adult, while he was in Enloe's care or custody, but

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part IV of the discussion.

no causation. The critical question we must resolve is whether or not the trial court, on the objection of a party who has made a complete but untimely compliance with the expert witness exchange requirements of Code of Civil Procedure section 2034.260,[1] has the authority to exclude from evidence expert testimony offered by a party who has completely and unreasonably failed to comply with these same requirements prior to the discovery cutoff date. We answer this question in the affirmative.

The relevant facts, as set forth in detail below, are the following. Neither Cottini nor Enloe disclosed information concerning its expert trial witnesses by the date specified in Enloe's demand for exchange of this information. Rather than disclose his experts on this date, Cottini brought a motion to disqualify the law firm of LaFollette, Johnson, De Haas, Fesler & Ames (LaFollette Johnson) from representing Enloe. Based on Cottini's refusal to disclose expert witness information to a law firm he claimed to be disqualified, Enloe offered to delay the exchange of this information until the trial court ruled on the disqualification motion. After the trial court denied the motion, Enloe made another demand for exchange of expert witness information. Receiving no response by the date specified in this second demand, Enloe unilaterally disclosed its expert witness information the following day. On the discovery cutoff date, Cottini still had not disclosed his expert witnesses. After an unsuccessful appeal to this court on the disqualification issue (see *Cottini v. Enloe Medical Center* (Nov. 5, 2010, C062904) [nonpub. opn.]), Cottini finally disclosed his expert witnesses and moved the trial court to reopen discovery, continue the trial, and grant him relief from the tardy disclosure. The trial court denied these motions and ultimately precluded Cottini from offering expert testimony.

On appeal, Cottini challenges these decisions. He also claims the trial court prejudicially erred "by giving the jury an instruction which closed the jury to considering

---

[1]    Undesignated statutory references are to the Code of Civil Procedure.

2

causation of [his] harms based upon common knowledge." We affirm the judgment. As we explain, the trial court did not abuse its discretion in concluding Cottini failed to demonstrate "exceptional circumstances" (§ 2034.710, subd. (b)) warranting his disclosure of expert witness information after the discovery cutoff date. It was also within the trial court's discretion to conclude Cottini's failure to submit this information was not "the result of mistake, inadvertence, surprise, or excusable neglect." (§ 2034.720, subd. (c)(1).) Nor did the trial court abuse its discretion in excluding from evidence the testimony of Cottini's expert witnesses. While section 2034.300, by its terms, did not mandate the exclusion of this testimony because Enloe's compliance with the expert witness exchange requirements was untimely, we do not read this section to preclude the trial court from excluding expert witness testimony for an egregious violation of the exchange requirements unless the objecting party's compliance was flawless. We conclude that where the party objecting to expert testimony under section 2034.300 would be entitled to mandatory exclusion of such testimony but for his or her own failure to timely comply with the expert witness exchange requirements, exclusion of the expert testimony is not mandatory, but discretionary. Based on the facts of this case, there was no abuse of discretion. Finally, we conclude any instructional error was harmless.

BACKGROUND

Cottini is a wheelchair athlete with incomplete quadriplegia who was brought to Enloe after sustaining a shoulder injury while training for the Paralympics. He sued Enloe for negligence and abuse of a dependent adult, claiming he suffered a severe pressure sore on his coccyx caused by the failure of Enloe employees to regularly reposition him, he did not receive adequate bowel care, and he also suffered a traumatic injury to his scrotum. The trial date was set for August 17, 2009.

3

*First Demand for Exchange of Expert Witness Information*

On June 3, 2009, Enloe served Cottini with a demand for "simultaneous exchange of information concerning each party's expert trial witnesses," specifying June 29, 2009, as the date for the exchange. Seven days later, Cottini's attorney, Joseph M. Earley III, sent a letter to Enloe's attorney, Julie Clark Martin, stating his belief her law firm, LaFollette Johnson, was disqualified from representing Enloe based on a conflict of interest and "object[ing] to any and all recent actions taken on behalf of Enloe by [her] firm." A more complete description of the purported conflict can be found in *Cottini v. Enloe Medical Center*, *supra*, C062904. For our purposes, we note Earley claimed to have given confidential information concerning Cottini's standard of care consultant to another attorney, Cameron Whitehead, prior to Whitehead's employment with the LaFollette Johnson firm.

On June 17, 2009, Martin responded to Earley's letter. She declined to withdraw from the case, concluding her firm was not disqualified from representing Enloe. According to Martin, while Earley mentioned the name of an expert "in passing" during a conversation with Whitehead concerning an unspecified case involving "a quadriplegic who contended that he developed a pressure ulcer due to the negligence of a defendant healthcare provider," disqualification was not required because (1) the disclosure of the name of Cottini's expert did not create a de facto attorney-client relationship between Whitehead and Cottini, (2) no confidential information was shared with Whitehead, and (3) even if the name of the expert qualified as a confidential communication, this information would no longer be confidential in two weeks when the parties were scheduled to disclose their experts.

On June 25, 2009, Cottini served an "objection" to Enloe's demand for exchange of expert witness information "based upon the conflict of interest." Four days later, on the date scheduled for the exchange, Cottini brought a motion seeking an order disqualifying LaFollette Johnson, staying discovery, and continuing the trial. On July 2,

2009, Martin sent a letter to Earley asking him to reconsider the disqualification motion. With respect to the expert witness exchange, she stated: "Based on your objection to our Demand for Disclosure of Expert Witnesses, we likewise did not disclose. Assuming that the Court denies your Motion to Disqualify, I propose that we agree to disclose no later than 3 days from the hearing on that motion. Kindly advise by close of business on July 6, 2009, as to your decision in this regard." Earley did not respond to this letter.

On July 15, 2009, the trial court denied the disqualification motion, concluding there was "not sufficient evidence to create an attorney-client relationship [between Whitehead and Cottini] nor enough of a disclosure to outweigh the right of [Enloe] to choose to have an attorney of their choice represent them." This ruling was made without prejudice to allow Earley to "bring forward another declaration that would be considered in camera." The trial court also denied Cottini's request to stay discovery and continue the trial.

### Second Demand for Exchange of Expert Witness Information

On July 16, 2009, Martin sent a letter to Earley stating: "We are now 30 days before trial, and you have unilaterally determined to not disclose expert witnesses, and further, you have refused to engage in any type of communication with me or my office to select a mutually agreeable date or time to accomplish this. Please be advised that we demand that experts be disclosed no later than Monday, July 20, 2009. [¶] . . . [¶] Should you fail to disclose your expert witnesses on that date, we will file a motion with the court to exclude your experts from testifying at time of trial. I remain ready and willing to discuss this further should you feel that our position is not well taken." Earley did not respond in writing, but did state by phone he believed the trial court "was wrong in its ruling" and he would "bring the motion again."

On July 21, 2009, having received no expert disclosure from Cottini the previous day, Enloe unilaterally disclosed its expert witnesses. This disclosure consisted of one retained expert (registered nurse Sue Altamirano) and 37 non-retained experts. Seven

5

days later, Cottini served a "further objection" to Enloe's demand for exchange of expert witness information, again "based upon the conflict of interest." When the discovery cutoff date for expert witnesses arrived on August 3, 2009, Cottini still had not disclosed his expert witnesses. Nor did he attempt to depose Enloe's experts prior to this date.

On August 7, 2009, renewing the disqualification motion, Cottini filed an application for in camera review of two supplemental declarations prepared by Earley, which was granted. After reviewing the supplemental declarations in camera, the trial court again denied the disqualification motion, ruling there was "no material and confidential information" disclosed to Whitehead. Cottini appealed and obtained an order from the trial court staying the proceedings pending resolution of the appeal.

On November 5, 2010, this court issued an opinion affirming the trial court's denial of Cottini's disqualification motion. (*Cottini v. Enloe Medical Center*, *supra*, C062904.) Following issuance of the remittitur, the trial court set the new trial date for February 28, 2011.

### *Post-appeal Discovery Attempts*

On January 6, 2011, Cottini disclosed his expert trial witnesses. The disclosure consisted of four retained experts (Charles Mahla, Ph.D., James Randy Mervis, M.D., Stephen D. Feinberg, M.D., and registered nurse Betty Lyons) and 49 non-retained experts. The following week, Cottini served various notices demanding (1) to depose Enloe's retained expert on January 25, 2011, (2) to depose seven members of Enloe's nursing staff between February 16 and 21, 2011, and (3) to inspect Enloe's facility on February 16, 2011.

On January 19, 2011, Enloe filed a motion seeking a protective order quashing the deposition notices, preventing the inspection, and striking Cottini's expert witness disclosure. In response, Cottini withdrew the deposition notices, urged the trial court to deny Enloe's motion for protective order as moot, and notified the court he would be filing a motion "for a brief trial continuance, to reopen discovery and for order regarding

6

late served disclosures."[2]  The trial court ruled:  "Right now, no depositions are scheduled or noticed, so there's no need for a protective order.  There has been a purported expert disclosure.  Now, whether or not that disclosure was proper or not to permit the witnesses to testify would be an issue left until the time of trial, when it is called."

### *Motion to Reopen Discovery*

On January 25, 2011, Cottini filed the promised motion to reopen discovery, arguing:  "**Neither defendant nor plaintiff timely served expert disclosures pursuant to [section] 2034, et seq.**  [¶]  The legal consequence of any party not timely serving an expert disclosure is that such party lacks standing to object to any other party's incomplete or untimely disclosure.  Therefore, if all parties fail to timely serve disclosures (as in this case) the trial may commence without the ability to preclude improper expert testimony.  This does not lead to an efficient trial.  [¶]  In order to avoid unnecessary motions regarding experts and other necessary discovery, justice will be better served by reopening discovery based upon a trial date a few months from the February 28, 2011 date, (which was only set a few weeks ago) and allowing plaintiff to serve a tardy expert disclosure.  Only then will the parties be in a position to enter into meaningful settlement discussions or, alternatively, to advocate for their respective clients.  Otherwise, both parties cannot receive a fair hearing of their cases at trial."  With respect to his compliance with section 2034.710, allowing the trial court to grant leave to submit a late expert witness disclosure after the time limit for the completion of discovery only "[u]nder exceptional circumstances" (§ 2034.710, subd. (b)), Cottini argued that because "there was a genuine concern regarding disqualification of defense counsel," he "objected to the expert disclosure demand served by defendant," and as a result, "both parties failed to timely disclose experts."  Cottini further argued he "*immediately*" served

---

[2]     For simplicity, we refer to Cottini's multifaceted motion as the motion to reopen discovery.

his expert witness disclosure following the remittitur and his "retained experts have been available for deposition since that time."

Two days later, Enloe filed an opposition to the motion. With respect to continuing the trial, Enloe argued Cottini did not make "the requisite showing of 'good cause,' " explaining: "Plaintiff had more than a reasonable opportunity to conduct discovery and prepare for trial prior to the original trial date. However, he made a deliberate, tactical decision to not engage in discovery but, rather, pursued meritless motions and appeals to disqualify [Martin]. He should not be entitled to capitalize on his gamesmanship in order to obtain yet another unwarranted continuance of trial of this matter." With respect to reopening discovery, Enloe argued Cottini "showed no interest" in taking depositions of Enloe staff "prior to close of discovery, or at any time prior to the original trial date," despite the fact Cottini properly noticed depositions of several staff members on May 14, 2009, and Enloe "attempted to arrange these depositions." Enloe also pointed out Cottini never "serve[d] a notice of deposition for any of the individuals listed in the [expert witness] disclosure" prior to the close of expert witness discovery and never "requested an inspection of [Enloe's] premises prior to the close of discovery." Finally, with respect to Cottini's request to allow the late expert witness disclosure, Enloe argued: "Plaintiff should not now be entitled to claim defendant's disclosure was 'untimely,' as any delay in the defendant's disclosure was an outcome produced by his own efforts to thwart the original trial from going forward. In addition, plaintiff should be precluded from introducing into evidence expert opinion testimony from any of his four retained experts, or any of the 49 other non-retained experts who he failed to disclose until the eve of the continued trial date, and more than one and one half years after disclosure should have been properly performed."

On January 28, 2011, at the hearing on the motion, after the parties argued their respective positions, the following exchange occurred between the trial court and Cottini's trial counsel:

8

"THE COURT: [To Cottini's counsel, Earley], what was the problem with disclosing an expert and the list of your witnesses, even if the Court had been wrong in finding a conflict of counsel? What possible harm could there have been?

"[Earley]: I don't understand why that's not clear.

"THE COURT: It's not clear to me at all. What would have been the harm if you had disclosed experts, then you asked the Court to rule on whether there was a conflict? What would have been the harm if the Court had decided there was a conflict?

"[Earley]: Why would -- I get back to the preliminary question. Why would plaintiff engage in litigation with a --

"THE COURT: What would have been the harm in disclosing an expert and if you had won the motion, they would have been off the case, you would have the same expert. All you were required to do was disclose the name and, I guess, the qualifications of the expert. What would have been the harm?

"[Earley]: The harm would have been that we were disclosing further information to a firm that we sincerely believed was disqualified.

"THE COURT: What is the problem with that? You won't answer my question. What is the problem with that? Okay, they've got the information about who your expert is and you're successful in throwing them off the case. They've got your expert, but they can't do anything with it because they can't try the case anyway. Or, you lose the motion, you disclose the expert and now they have the expert information.

"[Earley]: They already knew who my expert was. They already knew that. They knew -- also knew about the problems that we were having with --

"THE COURT: Why didn't you disclose? I guess there's no answer."

Earley then argued it would have made "no sense" to disclose experts to a firm he believed to be disqualified, and continued: "We said, look, there's a conflict, so we didn't disclose on that date. Neither did they. They didn't for three weeks later, or -- it doesn't matter whether it's three weeks or it's a year and a half, because it's still late.

What we did was, and what we're doing right now is we're asking for relief for that late filing. They've never done that, and they have to do that. They're in a position where they're late filed, we're late filed. I'm not trying to claim we're not late filed. I'm seeking relief for it today because we didn't have any time to do that before. Now we do. We brought this as quickly as we could, and we're asking for the proper relief. The defense is not even asking for that. If the -- the law[] is clear that when we come in and ask, and there's no prejudice established, and you know we have a reason for having -- having a tardy disclosure, and we made our experts available ever since, ever since the disclosures were served, for depositions, the Court doesn't have any choice but to grant the relief."

Denying the motion, the trial court explained: "[I]n light of your inability to answer my question as to why in the world you wouldn't [disclose], and your answer to that was, well, they knew it anyway, makes it even more preposterous . . . . The Court is going to find that there's no grounds for late disclosure of expert witnesses, and because there's no grounds for disclosure of late expert witnesses, the Court is going to deny the motion to continue the trial and the Court is going to deny the motion to reopen discovery."

### *Motions in Limine Regarding Expert Testimony*

On February 3, 2011, Cottini filed a motion in limine seeking to preclude Enloe from objecting to the expert testimony of his late-disclosed expert witnesses. Relying on *West Hills Hospital v. Superior Court* (1979) 98 Cal.App.3d 656, (*West Hills*) Cottini renewed his argument that since "[n]either defendant nor plaintiff served their disclosures '*on or before the date of exchange specified in the demand,*' " (italics added) as required by section 2034.260, subdivision (a), "neither [has] legal standing to object to the other's expert witness disclosure or seek preclusion of the other's expert witness testimony on the basis of being late." Enloe opposed the motion and filed its own motion in limine seeking to preclude Cottini from presenting expert testimony at trial. Enloe argued it

10

"reasonably complied with [section] 2034.260 by attempting to 'meet and confer' on the issue of expert disclosure several times after plaintiff expressly indicated that he would not participate in expert disclosure with the defendant, and ultimately by disclosing experts in late July of 2009." Accordingly, argued Enloe, it was "entirely within its rights to object to plaintiff's disclosure of expert witnesses more than one and one half years after the original date for the production of such experts," and Cottini's unreasonable failure to comply with the expert exchange requirements warranted mandatory exclusion of Cottini's experts under section 2034.300.

On February 22, 2011, the trial court ruled: "Neither party has standing to object to expert witness [t]estimony." Two days later, Enloe filed a motion to continue the trial, which was granted. A new trial date was set for May 9, 2011.

On May 6, 2011, Enloe renewed its motion in limine to preclude Cottini from offering expert testimony at trial. On May 9, 2011, the trial court informed counsel it was "inclined to go ahead and allow the experts" because "neither party has standing to object to the other's experts because nobody disclosed experts on time," but indicated it would entertain argument on the issue the next day. The following day, without hearing argument on the expert witness issue, the trial court stated: "The court has previously ruled on this. You may have called it a tentative decision. If it was a tentative decision, the court is going to rule with finality now. The court is going to find that neither party disclosed experts timely, therefore neither party has standing to object to the other party's expert witnesses. [¶] [Martin], I absolutely understand why your firm was tardy in disclosing the experts, and I do think there was gamesmanship, and I do think that we had improper actions on their part, but there was nothing that prevented you from disclosing expert witnesses timely." Martin then asked the trial court to reserve ruling to allow her to make a record on the issue. The trial court agreed and stated: "Let's reserve for now, but I'm certainly going to allow them to make mention of the experts [in the opening statement], and they are taking the chance that if [or] when we argue this, if I rule

11

differently, then I will bring it to the jury's attention, and I will strike all of the evidence including anything that was made reference to in the opening statements."

On May 12, 2011, at the close of the second day of trial, Enloe objected to the anticipated testimony of Phillip Filbrandt, M.D., a non-retained expert disclosed by Cottini after the cutoff date for expert discovery, who was scheduled to testify the following day. Martin argued: "The problem is, and I understand what the court was thinking, but the court only had half the analysis. The court also did not bring in these equitable principles that are so important and in play here because there was a late disclosure -- first of all, the second half of the analysis is that there needs to be mutual disclosure. That clearly did not happen nor was it ever going to happen in this case. The second part of the analysis, of course, is the fact that but for counsel's conduct, I would have been on time disclosing those experts. It's like somebody [helping] you back into a parking space and telling you, 'You got room,' and sticking their foot under your tire and suing you for negligence because you ran over their foot. [¶] In reliance, he made me late. He induced me. In my effort to try to arrange what we were supposed to do as officers of the court, arrange for mutual exchange, trying to work out something I thought was a legitimate beef, he had a motion pending to recuse me. I don't think that my client should be penalized. [¶] Moreover, there's a whole lot of prejudice going on here, your Honor. I now am looking at doing a cross-examination of an expert that as of what, February or January, I believed he couldn't use because he was not allowed to disclose. So then I don't learn until February that maybe there's a possibility he will be able to bring in experts. In the meantime, by golly, discovery is closed."

In response, Cottini's co-counsel, Lawrance A. Bohm, argued: "In order to have standing to prevent an expert from coming in to trial you must disclose on time. When that didn't happen, the right to make that objection was gone." He continued: "That's why I instructed [Earley] to file that motion in limine to allow the experts in this case so that I could decide whether or not I could take on this trial on behalf of [Cottini]. . . . [¶]

12

And now after I have had -- I have got two experts, one already bought her plane ticket and the other one is buying his now, this is coming up again after the court has indicated time and time again after looking at the codes and the authorities in [Earley]'s brief it's very straightforward, if either side does not disclose on time, it eliminates standing as to object to the others."

The trial court then addressed Martin: "I have to tell you that my gut tells me that you are correct. I think there's been terrible gamesmanship in this case. I have seen it from the beginning all the way through half an hour ago. So my gut tells me you are correct, that you have done things that are proper and [Earley] did not. My gut tells me he should not be allowed to call those witnesses. That's what my gut tells me, but my legal research tells me that you do not have standing to bring that objection." After further argument between the trial court and Cottini's counsel concerning the reason he did not disclose the expert information until after the remittitur, he conceded "there wouldn't have been any harm" in disclosing on the date set forth in Enloe's demand for exchange of expert witness information. The trial court found "bad faith" on the part of Earley for failing to disclose on that date and took the matter under submission.

The following morning, the trial court ruled Cottini would not be allowed to present expert testimony from his late-disclosed expert witnesses "based on the equities," explaining: "[T]he late disclosure by each side had an incredibly different effect. When [Martin] provided late disclosure, it was when discovery was still open; and her late disclosure didn't harm anyone equitably, because [Earley] could have taken any deposition [he] wanted at any time." However, the trial court continued, "[Martin] couldn't take depositions because, by the time [Cottini's] disclosure was made, discovery had already been cut off. [¶] Now, I understand that [Earley] magnanimously offered to reopen discovery; but reopening discovery is an entirely different concept than allowing depositions to be taken. Reopening discovery opens up everything. And it's not appropriate for [Martin], who has prepared her case all along, to agree to reopen

13

discovery for all purposes." Turning to the standing issue, the trial court explained that, because Enloe's expert witness disclosure was not timely, it could not demand the remedy of "mandatory exclusion" of Cottini's expert witnesses under section 2034.300. But the trial court did not read this provision to limit its equitable power to exclude Cottini's experts, and concluded: "[A]s I explained earlier, the Court's equitable powers causes this Court to rule that it would be highly prejudicial to . . . expect [Enloe] to go through trial with experts that weren't disclosed until after discovery cutoff."

### *Trial and Verdict*

After the ruling, Cottini's co-counsel asked to be allowed to proceed with Cottini's case "through the designated experts of the Defense." The trial court allowed trial to proceed on this basis. For present purposes, we need not recount the details of the trial. We do note Enloe filed a motion for nonsuit based on Cottini's lack of expert testimony on standard of care, breach, and causation. Denying the motion, the trial court stated: "The court is aware that this was a very close call, that really I'm amazed at counsel's ability to have cobbled together the case that he has been able to cobble together with the trial court's prior rulings, but it is a very disfavored motion, and it really is the intent that cases that are not absolutely without merit should go in front of a jury in a close call. The motion should be denied."

Thereafter, the trial court instructed the jury on Cottini's medical negligence and neglect of a dependent adult causes of action. However, the verdict form addressed only whether Enloe was liable under Cottini's neglect of a dependent adult cause of action. The jury was not asked to resolve the medical negligence cause of action. The jury found: (1) "[Cottini was] a dependent adult while in Enloe Medical Center's care or custody"; (2) "[Cottini was] in Enloe Medical Center's care or custody"; and (3) "one or more of Enloe Medical Center's employees fail[ed] to use that degree of care that a reasonable person in the same situation would have used in assisting in personal hygiene, provision of medical care, or health and safety hazards"; but (4) "the employee's conduct

14

[was not] a substantial factor in causing harm to [Cottini]." Judgment was entered in favor of Enloe. Cottini appeals.

DISCUSSION

I

*Statutory Overview*

"The statutes governing expert witness discovery are part of the Civil Discovery Act (§ 2016.010 et seq.). The purposes of the discovery statutes are 'to assist the parties and the trier of fact in ascertaining the truth; to encourage settlement by educating the parties as to the strengths of their claims and defenses; to expedite and facilitate preparation and trial; to prevent delay; and to safeguard against surprise.' [Citation.]" (*Boston v. Penny Lane Centers, Inc.* (2009) 170 Cal.App.4th 936, 950 (*Boston*).) The purpose of the expert witness discovery statutes are "to give fair notice of what an expert will say at trial. This allows the parties to assess whether to take the expert's deposition, to fully explore the relevant subject area at any such deposition, and to select an expert who can respond with a competing opinion on that subject area." (*Bonds v. Roy* (1999) 20 Cal.4th 140, 146-147.) Indeed, "the need for pretrial discovery is greater with respect to expert witnesses than ordinary fact witnesses because the opponent must prepare to cope with the expert's specialized knowledge. [Citation.] The Legislature responded to this need by enacting detailed procedures for discovery pertaining to expert witnesses. (See § 2034.210 et. seq.)" (*Boston*, *supra*, 170 Cal.App.4th at p. 951.)

Section 2034.210 provides: "After the setting of the initial trial date for the action, any party may obtain discovery by demanding that all parties simultaneously exchange information concerning each other's expert trial witnesses to the following extent: [¶] (a) Any party may demand a mutual and simultaneous exchange by all parties of a list containing the name and address of any natural person, including one who is a party, whose oral or deposition testimony in the form of an expert opinion any party expects to offer in evidence at the trial. [¶] (b) If any expert designated by a party under

15

subdivision (a) is a party or an employee of a party, or has been retained by a party for the purpose of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action, the designation of that witness shall include or be accompanied by an expert witness declaration under Section 2034.260. [¶] (c) Any party may also include a demand for the mutual and simultaneous production for inspection and copying of all discoverable reports and writings, if any, made by any expert described in subdivision (b) in the course of preparing that expert's opinion."

"The demand shall specify the date for the exchange of lists of expert trial witnesses, expert witness declarations, and any demanded production of writings. The specified date of exchange shall be 50 days before the initial trial date, or 20 days after service of the demand, whichever is closer to the trial date, unless the court, on motion and a showing of good cause, orders an earlier or later date of exchange." (§ 2034.230, subd. (b).)

Section 2034.250 provides in relevant part: "(a) A party who has been served with a demand to exchange information concerning expert trial witnesses may promptly move for a protective order. . . . [¶] (b) The court, for good cause shown, may make any order that justice requires to protect any party from unwarranted annoyance, embarrassment, oppression, or undue burden and expense. The protective order may include, but is not limited to, one or more of the following directions: [¶] (1) That the demand be quashed because it was not timely served. [¶] (2) That the date of exchange be earlier or later than that specified in the demand. [¶] (3) That the exchange be made only on specified terms and conditions. [¶] (4) That the production and exchange of any reports and writings of experts be made at a different place or at a different time than specified in the demand. [¶] (5) That some or all of the parties be divided into sides on the basis of their identity of interest in the issues in the action, and that the designation of any experts as described in subdivision (b) of Section 2034.210 be made by any side so created. [¶]

16

(6) That a party or a side reduce the list of employed or retained experts designated by that party or side under subdivision (b) of Section 2034.210."

Section 2034.260 provides: "(a) All parties who have appeared in the action shall exchange information concerning expert witnesses in writing on or before the date of exchange specified in the demand. The exchange of information may occur at a meeting of the attorneys for the parties involved or by a mailing on or before the date of exchange. [¶] (b) The exchange of expert witness information shall include either of the following: [¶] (1) A list setting forth the name and address of any person whose expert opinion that party expects to offer in evidence at the trial. [¶] (2) A statement that the party does not presently intend to offer the testimony of any expert witness. [¶] (c) If any witness on the list is an expert as described in subdivision (b) of Section 2034.210, the exchange shall also include or be accompanied by an expert witness declaration signed only by the attorney for the party designating the expert, or by that party if that party has no attorney. This declaration shall be under penalty of perjury and shall contain: [¶] (1) A brief narrative statement of the qualifications of each expert. [¶] (2) A brief narrative statement of the general substance of the testimony that the expert is expected to give. [¶] (3) A representation that the expert has agreed to testify at the trial. [¶] (4) A representation that the expert will be sufficiently familiar with the pending action to submit to a meaningful oral deposition concerning the specific testimony, including any opinion and its basis, that the expert is expected to give at trial. [¶] (5) A statement of the expert's hourly and daily fee for providing deposition testimony and for consulting with the retaining attorney."

This brings us to the crucial statutory provisions at issue in this case. Section 2034.300 provides that, with certain exceptions, "*on objection of any party who has made a complete and timely compliance with Section 2034.260*, the trial court *shall* exclude from evidence the expert opinion of any witness that is offered by any party who has unreasonably failed to do any of the following: [¶] (a) List that witness as an expert

17

under Section 2034.260.  [¶]  (b) Submit an expert witness declaration.  [¶]  (c) Produce reports and writings of expert witnesses under Section 2034.270.  [¶]  (d) Make that expert available for a deposition under Article 3 (commencing with Section 2034.410)."  (Italics added.)

One exception to section 2034.300's rule of mandatory exclusion of expert witness testimony is found in Article 5, commencing with section 2034.710, which provides in relevant part:  "(a) On motion of any party who has failed to submit expert witness information on the date specified in a demand for that exchange, the court *may* grant leave to submit that information on a later date.  [¶]  (b) A motion under subdivision (a) shall be made a sufficient time in advance of the time limit for the completion of discovery . . . to permit the deposition of any expert to whom the motion relates to be taken within that time limit.  *Under exceptional circumstances*, the court may permit the motion to be made at a later time."  (Italics added.)  Then, section 2034.720 provides: "The court *shall* grant leave to submit tardy expert witness information *only* if *all* of the following conditions are satisfied:  [¶]  (a) The court has taken into account the extent to which the opposing party has relied on the absence of a list of expert witnesses.  [¶] (b) The court has determined that any party opposing the motion will not be prejudiced in maintaining that party's action or defense on the merits.  [¶]  (c) The court has determined that the moving party did all of the following:  [¶]  (1) Failed to submit the information as the result of mistake, inadvertence, surprise, or excusable neglect.  [¶] (2) Sought leave to submit the information promptly after learning of the mistake, inadvertence, surprise, or excusable neglect.  [¶]  (3) Promptly thereafter served a copy of the proposed expert witness information described in Section 2034.260 on all other parties who have appeared in the action.  [¶]  (d) The order is conditioned on the moving party making the expert available immediately for a deposition under Article 3 (commencing with Section 2034.410), and on any other terms as may be just, including, but not limited to, leave to any party opposing the motion to designate additional expert

18

witnesses or to elicit additional opinions from those previously designated, a continuance of the trial for a reasonable period of time, and the awarding of costs and litigation expenses to any party opposing the motion." (Italics added.)

## II

### *Denial of Cottini's Motion to Reopen Discovery*

Cottini contends the trial court prejudicially erred in denying his motion to reopen discovery, continue the trial, and allow late submission of expert witness information. We disagree.

The trial court's decision to deny each of these requests is subject to review for abuse of discretion. (See *Johnson v. Alameda County Medical Center* (2012) 205 Cal.App.4th 521, 531 [motion to reopen discovery subject to abuse of discretion standard of review]; *Oliveros v. County of Los Angeles* (2004) 120 Cal.App.4th 1389, 1395 [motion for continuance subject to abuse of discretion standard of review]; *Plunkett v. Spaulding* (1997) 52 Cal.App.4th 114, 135 [motion for relief from failure to timely submit expert witness information subject to abuse of discretion standard of review], disapproved on other grounds by *Schreiber v. Estate of Kiser* (1999) 22 Cal.4th 31, 39-40.)

As a preliminary matter, we note Enloe made a timely demand for exchange of expert witness information on June 3, 2009 (see § 2034.220), and properly specified June 29, 2009, as the date of exchange (see § 2034.230, subd. (b)). Cottini served an "objection" to the demand on June 25, 2009. However, "[t]he Legislature did not provide for objections to demands for exchanges of experts." (*Zellerino v. Brown* (1991) 235 Cal.App.3d 1097, 1112.) Instead, Cottini should have filed a motion for a protective order. (§ 2034.250, subd. (a).) Having neither sought nor received such an order, Cottini was required to "exchange information concerning expert witnesses in writing on or before the date of exchange specified in the demand" (§ 2034.260, subd. (a)), i.e., June 29, 2009. He did not do so. Neither did Enloe. Insisting the exchange be "mutual

19

and simultaneous," as provided in section 2034.210, subdivision (a), Enloe attempted to negotiate an alternative date for the exchange, to no avail, and then served a second demand for exchange of expert witness information. Cottini again objected and again did not move for a protective order. When Cottini did not disclose his expert witness information by the date specified in the second demand, Enloe unilaterally disclosed its expert witness information on July 21, 2009. Between Enloe's disclosure of expert witness information and the cutoff date for expert discovery, Cottini did not disclose his expert witness information.[3] Nor did Cottini attempt to depose Enloe's experts. (See § 2034.410 et seq.) Instead, Cottini disclosed his expert witness information on January 6, 2011, after the case was remitted to the trial court following an unsuccessful appeal on the aforementioned disqualification issue. Cottini then, in connection with his motion to reopen discovery and continue the trial, moved the trial court to allow late submission of the expert witness information under section 2034.710, which was denied.

Section 2034.710 allows the trial court, "[o]n motion of any party who has failed to submit expert witness information on the date specified in a demand for that exchange," to "grant leave to submit that information on a later date," but provides such a motion "shall be made a sufficient time in advance of the time limit for the completion of discovery . . . to permit the deposition of any expert to whom the motion relates to be taken within that time limit. *Under exceptional circumstances*, the court may permit the motion to be made at a later time." (Italics added.) Cottini moved for leave to submit his tardy expert witness information well after the close of expert witness discovery. Thus,

---

**3** All discovery proceedings pertaining to expert witnesses must be completed "on or before the 15th day, and . . . motions concerning that discovery heard on or before the 10th day, before the date initially set for the trial of the action." (§ 2024.030.) However, because the 15th day before the initial trial date of August 17, 2009, fell on a Sunday, the cutoff date for expert discovery was extended until "the next court day closer to the trial date" (§ 2016.060), i.e., August 18, 2009.

exceptional circumstances were required in order for Cottini to be entitled to make the motion at all.

Moreover, section 2024.030 provides that "[a]ny party shall be entitled *as a matter of right* . . . to have motions concerning [expert witness] discovery heard on or before the 10th day, before the date initially set for the trial of the action." (Italics added.) "Thus, if a party properly notices a discovery motion to be heard on or before the discovery motion cutoff date, that party has a *right* to have the motion heard. By negative implication, a party who notices a discovery motion to be heard *after* the discovery motion cutoff date does not have a right to have the motion heard." (*Pelton-Shepherd Industries, Inc. v. Delta Packaging Products, Inc.* (2008) 165 Cal.App.4th 1568, 1586.) In apparent recognition of this, Cottini also moved to reopen discovery under section 2024.050, which provides in relevant part that "[o]n motion of any party, the court may grant leave . . . to have a motion concerning discovery heard, closer to the initial trial date, or to reopen discovery after a new trial date has been set." (§ 2024.050, subd. (a).) Subdivision (b) of this section provides: "In exercising its discretion to grant or deny this motion, the court shall take into consideration any matter relevant to the leave requested, including, but not limited to, the following: [¶] (1) The necessity and the reasons for the discovery. [¶] (2) The diligence or lack of diligence of the party seeking the discovery or the hearing of a discovery motion, and the reasons that the discovery was not completed or that the discovery motion was not heard earlier. [¶] (3) Any likelihood that permitting the discovery or hearing the discovery motion will prevent the case from going to trial on the date set, or otherwise interfere with the trial calendar, or result in prejudice to any other party. [¶] (4) The length of time that has elapsed between any date previously set, and the date presently set, for the trial of the action." (§ 2024.050, subd. (b).)

Denying Cottini's motion, the trial court stated: "[I]n light of your inability to answer my question as to why in the world you wouldn't [disclose], and your answer to that was, well, they knew it anyway, makes it even more preposterous . . . The Court is

21

going to find that there's no grounds for late disclosure of expert witnesses, and because there's no grounds for disclosure of late expert witnesses, the Court is going to deny the motion to continue the trial and the Court is going to deny the motion to reopen discovery." Implicit in this statement is a finding no "exceptional circumstances" justified Cottini's filing of the motion to allow late submission of expert witness information after the close of discovery. (§ 2034.710.) Based on the facts of this case, the trial court did not abuse its discretion in so concluding. Also implicit in the trial court's statement is a finding Cottini did not demonstrate "diligence" in seeking expert witness discovery prior to the cutoff date and did not supply sufficient "reasons that the discovery was not completed" prior to that date. (§ 2024.050, subd. (b)(2).) Indeed, Cottini's attorneys made a strategic decision to forgo expert witness discovery in favor of pursuing a meritless disqualification motion. Diligence would have required Cottini to disclose his expert witnesses while this motion was pending. At the very least, he should have done so after the trial court denied the motion, when Enloe disclosed its experts. Earley later conceded this would have caused Cottini no harm. Gambling on the outcome of a renewed disqualification motion and appeal of the trial court's denial of the motion is not a good reason to fail to complete discovery during the statutory period for its completion. Based on the factors listed in section 2024.050, subdivision (b), the trial court was more than justified in denying Cottini leave to reopen discovery. And without such leave, he had no right to have his motion to submit late expert witness information heard at all.

Finally, in light of the foregoing implied findings, section 2034.720 mandated denial of Cottini's motion to allow late submission of expert witness information. As mentioned, this section provides: "The court *shall* grant leave to submit tardy expert witness information *only* if *all* of the following conditions are satisfied: [¶] (a) The court has taken into account the extent to which the opposing party has relied on the absence of a list of expert witnesses. [¶] (b) The court has determined that any party opposing the

22

motion will not be prejudiced in maintaining that party's action or defense on the merits. [¶] (c) The court has determined that the moving party did all of the following: [¶] (1) Failed to submit the information as the result of mistake, inadvertence, surprise, or excusable neglect. [¶] (2) Sought leave to submit the information promptly after learning of the mistake, inadvertence, surprise, or excusable neglect. [¶] (3) Promptly thereafter served a copy of the proposed expert witness information described in Section 2034.260 on all other parties who have appeared in the action. [¶] (d) The order is conditioned on the moving party making the expert available immediately for a deposition under Article 3 (commencing with Section 2034.410), and on any other terms as may be just, including, but not limited to, leave to any party opposing the motion to designate additional expert witnesses or to elicit additional opinions from those previously designated, a continuance of the trial for a reasonable period of time, and the awarding of costs and litigation expenses to any party opposing the motion." (Italics added.)

Conversely, the trial court *shall not* grant leave to submit late expert witness information if *any* of the statutory conditions are not satisfied. Here, the trial court's statements on the record indicate a finding Cottini's failure to submit the expert witness information was not "the result of mistake, inadvertence, surprise, or excusable neglect." (§ 2034.720, subd. (c)(1).) It was gamesmanship. As our Supreme Court has stated: " 'Late disclosure of experts . . . frustrates the very purposes of the discovery statutes, and should be permitted, with appropriate safeguards, only when absolutely necessary to avoid a miscarriage of justice.' [Citation.]" (*Bonds v. Roy*, *supra*, 20 Cal.4th at p. 147.)

We conclude the trial court did not abuse its discretion in denying Cottini's motion to reopen discovery, continue the trial, and allow late submission of expert witness information.

23

## III

### *Exclusion of Cottini's Expert Witnesses*

Cottini also claims the trial court prejudicially erred in excluding from evidence the testimony of his expert witnesses as a remedy for his failure to comply with the expert witness exchange requirements prior to the cutoff date for expert discovery. He is mistaken.

"We generally review the trial court's ruling on a motion to exclude an expert's opinion for abuse of discretion. [Citation.] . . . [Citation.] But 'when the exclusion of expert testimony rests on a matter of statutory interpretation, we apply de novo review.' [Citation.]" (*Boston*, *supra*, 170 Cal.App.4th at p. 950.) "Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy. [Citations.]" (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737; *San Leandro Teachers Assn. v. Governing Bd. of San Leandro Unified School Dist.* (2009) 46 Cal.4th 822, 831.)

Section 2034.300 provides that, with certain exceptions, "*on objection of any party who has made a complete and timely compliance with Section 2034.260*, the trial court *shall* exclude from evidence the expert opinion of any witness that is offered by any party who has unreasonably failed to do any of the following: [¶] (a) List that witness as an expert under Section 2034.260. [¶] (b) Submit an expert witness declaration. [¶]

24

(c) Produce reports and writings of expert witnesses under Section 2034.270. [¶]

(d) Make that expert available for a deposition under Article 3 (commencing with Section 2034.410)." (Italics added.) As previously explained, Cottini did not qualify for the exception to this rule of mandatory exclusion of expert testimony found in Article 5 (see §§ 2034.710 and 2034.720).

Cottini does not dispute that had Enloe made a complete and timely compliance with section 2034.260, exclusion of his expert witnesses would be mandatory under section 2034.300. Nor could he. By waiting until after the expert discovery cutoff date to disclose his expert witnesses, he prevented Enloe from deposing these witnesses, making them unavailable for deposition. And while it may not have been unreasonable for Cottini to seek disqualification of Enloe's attorneys—even though he ultimately did not prevail on that issue—it was unreasonable for him to use the disqualification motion as a reason not to disclose expert witness information until after the cutoff date for expert discovery. Nor does Cottini's willingness to reopen discovery following the remittitur remedy the situation. As we have explained, in order to grant Cottini's motion to reopen discovery, the trial court had to consider his diligence in pursuing discovery prior to the cutoff date and the reasons for his failure to complete discovery prior to that date. (§ 2024.050, subd. (b).) Cottini was neither diligent in pursuing discovery, nor did he possess a good reason for failing to disclose his expert witnesses and depose Enloe's experts before the close of discovery.

Accordingly, relying on *West Hills*, *supra*, 98 Cal.App.3d 656, Cottini argues Enloe's late disclosure of its expert witnesses results in a lack of standing to object to the testimony of Cottini's expert witnesses. Such reliance is misplaced. In *West Hills*, a medical malpractice case brought by the plaintiff against West Hills Hospital and two doctors, the defendant doctors addressed a demand for expert witness information to the plaintiff and, while the demand was not addressed to the defendant hospital, in addition to serving the plaintiff, the demand was also served on counsel for the hospital. (*Id*. at p.

25

657.) The hospital did not serve a list of experts on any party. Because of this, the plaintiff successfully moved to prevent the hospital from calling any expert witnesses at trial. (*Id*. at p. 658.) The Court of Appeal issued a writ of mandate directing the trial court to vacate its order granting the plaintiff's motion to exclude the expert testimony. (*Id*. at p. 661.) The court framed the issue as "whether, by serving an informational copy of the Demand on petitioner, [the defendant doctors] also created rights and duties as between petitioner and real party." (*Id*. at p. 659.) Answering this question in the negative, the court held "only the party who makes the demand and the party on whom it is made are required to comply with [former] section 2037.2 and not other parties on whom copies of the demand may be served." (*Id*. at p. 660.)

The court then stated: "Petitioner's second contention regarding real party's standing is also well taken. [Former section] 2037.5 requires first that the party seeking sanctions be in compliance with [former] section 2037.2. Real party had filed his list of experts after the date of exchange ([former §] 2037.1) and therefore was not, strictly speaking, in compliance with [former] section 2037.2. Furthermore, even if petitioner had been required to serve a list of its experts, pursuant to [former] section 2037.2, subdivision (a)(3), the only party on whom it would have been required to serve its list was the party who served the Demand on it -- in other words, [the defendant doctors], and pursuant to [former] section 2037.5, only [the defendant doctors] would have had standing to object to petitioner's calling its expert witnesses." (*West Hills*, *supra*, 98 Cal.App.3d at p. 660.)[4]

---

[4] Former section 2037.2 provided in relevant part: "Not later than the date of exchange: [¶] (1) Each party who served a demand and each party upon whom a demand was served shall deposit with the clerk of the court their list of expert witnesses. [¶] (2) A party who served a demand shall serve his [or her] list upon each party on whom he [or she] served his [or her] demand. [¶] (3) Each party on whom a demand was served shall serve his [or her] list upon the party who served the demand." (Former § 2037.2, subd. (a); Stats. 1978, ch. 1069, § 1, p. 3286.)

Assuming the foregoing statements in *West Hills* amount to an alternative holding rather than dictum (see *Varshock v. Dept. of Forestry & Fire Protection* (2011) 194 Cal.App.4th 635, 646, fn. 7), we cannot read the decision to hold in all cases, regardless of the circumstances, strict compliance with former section 2037.2 was required in order to have standing to object to expert testimony. "It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered." (*Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1999) 19 Cal.4th 1182, 1195.) At most, the *West Hills* decision held that where the party seeking exclusion of expert testimony under former section 2037.5 did not comply with former section 2037.2, and where the party seeking to offer such expert testimony was not required to serve a list of expert witnesses on the objecting party in any event, the objecting party may not demand the mandatory sanction of exclusion provided for in former section 2037.5. Here, unlike *West Hills*, Enloe demanded and was entitled to receive Cottini's expert witness list on the date specified in the demand. Cottini refused, prompting Enloe's late disclosure. Thus, *West Hills* did not address standing to object to expert witness testimony in the circumstances present here. Nor did that decision interpret the current version of the expert witness exchange statutes. Moreover, the question in this case is not whether Enloe was in a position to demand the mandatory sanction of exclusion provided for in section 2034.300. It was not. The question is whether Enloe's inability to demand exclusion under section 2034.300 means the trial court lacked inherent authority to exclude testimony from Cottini's expert witnesses.

---

Former section 2037.5 provided: "Except as provided in Section 2037.6, upon objection of a party who has served his [or her] list of witnesses in compliance with Section 2037.2, no party required to serve a list of expert witnesses on the objecting party may call an expert witness to testify, except for purposes of impeachment, unless the information required by Section 2037.3 for such witness is included in the list served." (Stats. 1978, ch. 1069, § 1, p. 3286.)

27

" 'Our Supreme Court has recognized that California courts have inherent powers, independent of statute, derived from two distinct sources: the courts' "equitable power derived from the historic power of equity courts" and "supervisory or administrative powers which all courts possess to enable them to carry out their duties." ' [Citation.] 'The court's inherent power to curb abuses and promote fair process extends to the preclusion of evidence. Even without such abuses the trial court enjoys "broad authority of the judge over the admission and exclusion of evidence." [T]rial courts regularly exercise their "basic power to insure that all parties receive a fair trial" by precluding evidence.' " (*Continental Ins. Co. v. Superior Court* (1995) 32 Cal.App.4th 94, 107-108, quoting *Peat, Marwick, Mitchell & Co. v. Superior Court* (1988) 200 Cal.App.3d 272, 288.)

We read nothing in section 2034.300 to limit the inherent power of the trial court to exclude from evidence the testimony of Cottini's expert witnesses as a remedy for his unreasonable failure to comply with the expert witness exchange requirements prior to the cutoff date for expert discovery. The statute simply states that when certain conditions are met (i.e., the party seeking to call an expert witness has unreasonably failed to list the witness as an expert under section 2034.260, submit an expert witness declaration, produce reports and writings under section 2034.270, or make the expert available for a deposition), the appropriate remedy is exclusion of that expert's testimony. Where the objecting party has made a complete and timely compliance with section 2034.260, exclusion is mandatory. The statute does *not* state, as Cottini would have us hold, that where the objecting party's compliance with section 2034.260 is untimely, the trial court is powerless to exclude such testimony.

While not directly on point, we find *Castaline v. City of Los Angeles* (1975) 47 Cal.App.3d 580 to be instructive. There, in a personal injury case, the trial court excluded the testimony of a doctor who examined the plaintiff three days before trial. Finding no error, the Court of Appeal explained: "While we doubt that California Rules

28

of Court, [former] rule 222, prohibits parties from generating evidence -- as distinguished from initiating discovery -- within 30 days of trial, the defense point that the City would be unfairly surprised by the witness had merit. The City never produced any medical testimony and its counsel's statements that after receiving answers to interrogatories on October 15, he cancelled a medical examination on behalf of the City stood unchallenged. Under all of these circumstances we cannot say that the court's exclusion of [the doctor's] testimony was not within its basic power to insure that all parties receive a fair trial." (*Id.* at p. 592; see also *Boston*, *supra*, 170 Cal.App.4th at p. 952 ["That we find no statutory prohibition against the continued creation of expert reports and writings after the specified date does not mean that a trial court is powerless to prevent or respond to abuse of expert witness discovery procedures. As a general matter, the trial court is empowered to exercise superintendency over discovery"].)

Here, Cottini refused to disclose his expert witness information on the date specified in Enloe's demand for exchange of this information. Instead, he filed a motion to disqualify Enloe's trial counsel. Because the discovery statutes provide for "mutual and simultaneous exchange" of expert witness information (§ 2034.210, subd. (a)), Enloe also did not disclose its experts on this date and attempted to negotiate an alternative date for the exchange. When that failed, Enloe served a second demand for exchange of expert witness information. Cottini again refused to disclose his expert witnesses. Enloe then unilaterally disclosed. This disclosure, while late, was made *before* the close of expert witness discovery. Cottini does not argue he would not have had sufficient time to depose Enloe's experts had he been pursuing discovery rather than his meritless disqualification motion. Cottini's disclosure, on the other hand, was made *after* the close of expert witness discovery, providing no opportunity for Enloe to depose Cottini's experts. In this case where the importance of discovery of experts is manifest, allowing Cottini's expert witnesses to testify without any ability for Enloe to depose these witnesses would be the essence of unfair surprise. (See *Zellerino v. Brown*, *supra*, 235

29

Cal.App.3d at p. 1109.) The trial court had inherent authority to exclude the testimony of Cottini's expert witnesses and did not abuse its discretion in exercising this authority based on the facts of this case.

We also reject Cottini's argument the trial court prejudicially erred in excluding the expert testimony in this case because Enloe's " 'renewed' motion in limine was actually an improper motion for reconsideration under the authority of [section] 1008." "In *Le Francois v. Goel* (2005) 35 Cal.4th 1094, our Supreme Court concluded that . . . section 1008 constitutionally 'prohibit[s] a *party* from [seeking reconsideration] not based on new facts or law, but do[es] not limit a *court's* ability to reconsider its previous interim orders on its own motion, as long as it gives the parties notice that it may do so and a reasonable opportunity to litigate the question.' [Citation.] Justice Kennard filed a concurring and dissenting opinion in which she concluded the judgment should be affirmed, notwithstanding the trial court's error in granting an impermissible motion for reconsideration, because no miscarriage of justice had been shown. [Citation.] The majority disagreed that the judgment should be affirmed 'on the basis of harmless error' because 'defendants have made no such harmless error argument, and thus plaintiffs have had no chance to argue against it. Moreover, the trial court did not inform the parties that it might change its previous ruling on its own motion and give them an opportunity to be heard, as it should have done. We do not know what would have occurred if it had done so. Under the circumstances, we think it best to remand the matter for the court and parties to follow proper procedure.' [Citation.]" (*People v. Edward D. Jones & Co.* (2007) 154 Cal.App.4th 627, 635-636.)

Here, assuming Enloe's renewed motion to exclude expert witness testimony was an impermissible motion for reconsideration, the trial court effectively informed the parties it was reconsidering its prior ruling on May 9, 2011, when it stated it was "inclined to go ahead and allow the experts," but also indicated it would entertain argument on the issue. The next day, the trial court again reserved ruling on the renewed

motion and again stated it would entertain argument on the issue. Two days later, the parties argued the issue. On May 13, 2011, the trial court issued its ruling excluding the expert testimony. Based on these circumstances, we conclude the trial court gave Cottini an adequate opportunity to be heard. Nor has Cottini demonstrated any likelihood the trial court would have reached a different conclusion had it provided him more time to litigate the issue. Any error was harmless.

Finally, Cottini argues the trial court should have imposed one of the "many less severe remedies it could have imposed short of excluding [his] experts." We are not persuaded. Section 2034.300 evinces the Legislature's considered judgment that the proper remedy for failure to comply with the expert witness exchange requirements is exclusion of the proffered expert testimony. (See *Bonds v. Roy*, *supra*, 20 Cal.4th at p. 148-149.) As we have explained, because Enloe did not fall within the description set forth in section 2034.300's prefatory clause, it could not demand that the trial court exclude from evidence the testimony of Cottini's expert witnesses. Nevertheless, it was within the trial court's inherent authority to do so.

Nor are we persuaded by Cottini's reliance on *New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, a case in which the Court of Appeal held, in the absence of a violation of an order compelling Albertsons to produce certain video recordings, the trial court was not authorized to preclude Albertsons from introducing evidence of these recordings as a sanction for its failure to produce the recordings in response to an inspection demand. This decision was based on the language of sections 2031.310 and 2031.320, which govern inspection demands and "provide for the imposition of an issue, evidence, or terminating sanction, . . . only '[i]f a party fails to obey an order compelling further response' (§ 2031.310, subd. (e)) or '[i]f a party then fails to obey an order compelling inspection' (§ 2031.320, subd. (c))." (*Id*. at pp. 1423-1424.) The court further held these provisions also limited the inherent power of the trial court to impose an evidentiary sanction in the absence of an order compelling Albertsons

31

to produce the recordings. (*Id.* at pp. 1431-1434.) Acknowledging as a "general rule" that "misconduct committed in connection with the failure to produce evidence in discovery may justify the imposition of nonmonetary sanctions even absent a prior order compelling discovery" where the misconduct is "sufficiently egregious" or "where it is reasonably clear that obtaining such an order would be futile" (*id.* at p. 1426), the court concluded these circumstances did not apply to the misconduct before it. (*Id.* at p. 1428.) Here, as we have explained, while section 2034.300 did not compel exclusion of the expert testimony in this case, neither did it prevent the trial court from exercising its inherent authority to do so. We also conclude Cottini's decision to wait until after the close of expert witness discovery to disclose his expert witnesses is a sufficiently egregious violation of the expert discovery rules to fall within the general rule set forth above.

In sum, while section 2034.300, by its terms, did not mandate the exclusion of Cottini's expert witness testimony because Enloe's compliance with the expert witness exchange requirements was untimely, we do not read this section to preclude the trial court from excluding expert witness testimony for an egregious violation of the exchange requirements unless the objecting party's compliance was flawless. We conclude that where the party objecting to expert testimony under section 2034.300 would be entitled to mandatory exclusion of such testimony but for his or her own failure to timely comply with the expert witness exchange requirements, exclusion of the expert testimony is not mandatory, but discretionary. Based on the facts of this case, there was no abuse of discretion.

## IV

### *Instructional Error*

Finally, Cottini asserts the trial court prejudicially erred by instructing the jury not to consider "causation of [his] harms based upon common knowledge." Any instructional error was harmless.

32

As relevant to the issue raised on appeal, the following Judicial Council of California Civil Jury Instructions (2011) (CACI) were delivered to the jury regarding Cottini's *medical negligence claim.*

CACI No. 500 stated: "Patrick Cottini claims that he was harmed by Enloe Medical Center's medical negligence. To establish *this claim*, Patrick Cottini must prove each of the following elements through the expert testimony of Dr. Filbrandt and/or Nurse Altamirano: [¶] 1. That Enloe Medical Center was negligent; [¶] 2. That Patrick Cottini was harmed; and [¶] 3. That Enloe Medical Center's negligence was a substantial factor in causing Patrick Cottini's harm." (Italics added.)

CACI No. 501 stated: "Hospital Staff is negligent if they fail to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful Hospital Staffs would use in the same or similar circumstances. The level of skill, knowledge, and care is sometimes referred to as 'the standard of care.' [¶] You must determine the level of skill, knowledge, and care that other reasonably careful Hospital Staff would use in the same or similar circumstances based only on the expert testimony of Dr. Filbrandt and/or Nurse Altamirano."

CACI No. 514 stated: "A hospital is negligent if it does not use reasonable care toward its patients. A hospital must provide procedures, policies, facilities, supplies, and qualified personnel reasonably necessary for the treatment of its patients. [¶] When you are deciding whether Enloe Medical Center was negligent, you must base your decision only on the expert testimony of Dr. Filbrandt and/or Nurse Altamirano."

With respect to Cottini's *neglect of a dependent adult claim*, the jury was instructed with CACI No. 3103 as follows:

"Patrick Cottini claims that he was neglected by Enloe Medical Center's employee or employees in violation of the Elder Abuse and Dependent Adult Civil Protection Act. To establish *this claim*, Patrick Cottini must prove all of the following: [¶] 1. That Enloe Medical Center had care or custody of Patrick Cottini; [¶] 2. That

Patrick Cottini was a dependent adult while he was in Enloe Medical Center's care or custody; [¶] 3. That Enloe Medical Center's employee or employees failed to use the degree of care that a reasonable person in the same situation would have used in: [¶] assisting in personal hygiene; [¶] providing medical care; or [¶] protecting Patrick Cottini from health and safety hazards; [¶] 4. That Patrick Cottini was harmed; and [¶] 5. That Enloe Medical Center's employee or employees' conduct was a substantial factor in causing Patrick Cottini's harm." (Italics added.)

With respect to both claims, the jury was instructed on causation with CACI No. 430 as follows: "A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm."

We need not resolve whether the trial court erred in limiting the jury's consideration of Cottini's medical negligence claim to the expert testimony of Dr. Filbrandt and Nurse Altamirano because, as previously mentioned, the verdict form addressed *only* whether Enloe was liable under Cottini's neglect of a dependent adult claim. The jury found: (1) "Patrick Cottini [was] a dependent adult while in Enloe Medical Center's care or custody"; (2) "Patrick Cottini [was] in Enloe Medical Center's care or custody"; and (3) "one or more of Enloe Medical Center's employees fail[ed] to use that degree of care that a reasonable person in the same situation would have used in assisting in personal hygiene, provision of medical care, or health and safety hazards"; but that (4) "the employee's conduct [was not] a substantial factor in causing harm to Patrick Cottini." The instructions pertaining to *this claim* in no way limited the jury's consideration to the expert testimony of Dr. Filbrandt and Nurse Altamirano. Thus, even assuming the medical negligence instructions were erroneous, the error was harmless because the jury's verdict rests entirely on the neglect of a dependent adult claim upon which the jury was properly instructed.

34

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to Enloe Medical Center. (Cal. Rules of Court, rule 8.278(a).)


                                                HOCH    , J.


We concur:


    RAYE    , P. J.


    HULL    , J.