Filed 4/26/16  P. v. Perez CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>LISA DAWN PEREZ,<br><br>        Defendant and Appellant. | C078042<br><br>(Super. Ct. No. 12F06402) |

A jury found defendant Lisa Dawn Perez guilty of second degree murder while driving under the influence (DUI) (count one, see *People v. Watson* (1981) 30 Cal.3d 290), vehicular manslaughter with gross negligence causing injury to more than one person (count two), and driving with a DUI-suspended license (count three).  (Pen. Code, §§ 187, 191.5, subd. (a)[1]; Veh. Code, §§ 14601.2, subd. (a), 23558.)  The trial court

---

[1] Further undesignated statutory references are to the Penal Code

found true a strike, a 1991 first degree burglary (§§ 459, 667, subds. (b)-(i), 1170.12 ), and sentenced defendant to 30 years to life in prison. Defendant timely filed this appeal.

On appeal, defendant contends the trial court should have excluded evidence of her prior misconduct that did not result in convictions, and the trial court did not properly respond to a jury question. We shall remand for imposition and stay of a sentence on count two, and otherwise affirm.

## FACTS

At about 3:45 p.m. on September 18, 2012, Jason Kearsing, an experienced Elk Grove police officer with both DUI and speed-estimation training, was off duty and was stopped at a red light on Dillard Road, at the intersection of the Jackson Highway (also known as Highway 16), with his wife in the car. He saw defendant drive a Jeep Cherokee through a red light at a slow rate of speed and then drive on the wrong side of the road for a while. As he followed her, he was driving the posted speed limit of about 55 miles per hour and she was driving erratically at about 65 to 70 miles per hour. He lost sight of her until he eventually crested a rise, and saw a traffic collision ahead. Kearsing and his wife, a paramedic, assisted at the collision scene. Kearsing helped cut defendant free of her shoulder belt, and then began to direct traffic.

Kearsing's wife gave similar testimony. She removed defendant from the Jeep and smelled alcohol, but could not remove the passenger because his foot was trapped. She went into the back seat and, with the aid of a nurse who had been passing by, administered CPR to the passenger. He died at the scene.

Other testimony showed defendant also ran a red light at Sunrise Boulevard and Jackson Road, causing a school bus to collide with defendant's car at about 3:50 that afternoon, resulting in injuries to the bus driver, Renita Haynes.

Retired California Highway Patrol (CHP) officer Jeffrey Sortomme, a trained accident investigator, testified Lawrence Perez was dead at the scene. Defendant smelled of alcohol and displayed many objective signs of intoxication. He attempted to use a

2

preliminary alcohol screening (PAS) device, but defendant only pretended to blow into it, so no reading could be taken. Sortomme believed defendant was intoxicated. Her Jeep ran the light, and the bus collided with it.

CHP officer Christopher Cavner saw a phlebotomist take a blood draw from defendant at the hospital, at about 7:20 that evening. It tested at .20 percent blood-alcohol content, and would have been around a blood-alcohol content of .27 percent at the time of the accident. CHP officer James Young was present when a nurse told defendant--who still appeared to be intoxicated--that her husband was dead. Defendant became hysterical and said, "She had only drank a few drinks that evening."

Sabina Monteiro testified she had been an addiction counselor and worked in DUI offender programs, and eventually managed several locations. A 2006 certificate showed that defendant completed an 18-month DUI program, although Monteiro did not remember defendant. In order to get that certificate, defendant would have to complete 12 hours of alcohol and drug education. The program would instruct on impairment caused by alcohol as well as the fact that driving while intoxicated was hazardous to human life.

Faye Cox testified she was disabled and defendant had been one of her in-home caregivers for years. Defendant came five days a week, in the mornings, and seemed intoxicated about three out of every five days. Sometimes when defendant would take Cox on errands, she had been drinking and would "go in and out of traffic." Cox told defendant she should not drink and drive, that it was dangerous and someone could get hurt, and that defendant needed to get help. In response, defendant said she knew and that she knew what she was doing. One day when Cox had a doctor's appointment, defendant arrived at about 8:30 a.m., drunk and loud. On the way to the appointment, she drove poorly, and Cox told her not to drive like that. In response, defendant said "it was okay. She knew what she was doing." When defendant became disruptive, the doctor told her to get out, and police came and arrested her.

3

Joshua Helton, a Davis police officer trained in DUI matters, testified that on the morning of June 7, 2012, he was sent to the doctor's office in response to a complaint about a patient's caregiver causing a disturbance, and saw defendant get into a car and drive. He eventually spoke to her, noting that she "had sort of slurred speech, she had watery eyes, droopy eyelids, [and a] relaxed facial expression." She smelled of alcohol. She said she had not had anything to drink since the prior night. Defendant kept interrupting him when he tried to administer field sobriety tests, had trouble spelling her own name, and a PAS test showed she was over the legal limit, so she was arrested. Further, Officer Helton issued her a DMV form notifying her that her license would be administratively suspended as of 30 days from that date, during which time she could file an appeal with the DMV.

Jeffrey Courtney, a retired Jackson police officer with DUI training, stopped defendant on the afternoon of September 14, 2012 (four days before the fatal collision at issue herein). She was disoriented, had slurred speech, smelled of alcohol, and failed field sobriety tests or refused to take them. She said he must be bored and should just take her to jail. A chemist testified defendant's blood alcohol was over the legal limit.

## DISCUSSION

### I

### *Prior Misconduct Evidence*

Defendant contends the People should not have been permitted to introduce evidence about prior incidents that had not resulted in convictions, and that this evidence unduly prejudiced the jury in this case. We find no error.

The People sought to introduce four items of evidence to show defendant's actual knowledge of the danger of drunk driving to help the People prove implied malice as required for a *Watson* murder case. First, defendant was convicted in 2005 of DUI, and was required to attend DUI classes. Second, at the time of the instant offense, DUI charges were pending against defendant in two different counties, one based on a June

4

2012 arrest in Yolo County and one based on an Amador County arrest on September 14, 2012--four days before the instant offense. In both cases there was evidence defendant was extremely intoxicated. Third, defendant's former employer, for whom defendant gave in-home care, would testify she had repeatedly warned defendant about the dangers of DUI. Fourth, a counselor would testify the classes defendant had to take as a result of the 2005 DUI conviction stressed the dangers of DUI. Defendant objected to "other crime" evidence.

The trial court ruled the evidence was admissible, except that the People could not introduce the degree of defendant's intoxication in the pending 2012 cases from the other counties--only that the defendant was driving above the legal limit--unless the defense opened the door to such evidence. The trial court later held a hearing (see Evid. Code, § 402) to determine whether defendant's employer was competent to testify, and found without further objection that she was.

At trial, the evidence was introduced as described, *ante*.

The parties discussed how to phrase a limiting instruction and the parties agreed with the modifications. The trial court instructed as follows:

> "During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other.

> "Specifically, the People have presented evidence of the defendant's arrest for driving under the influence in Yolo County on or about June 7th, 2012 and the defendant's driving under the influence in Amador County on or about September 14, 2012.

> "You may consider that evidence for the limited purpose of determining whether the defendant had the requisite mental state of implied malice when you are considering whether or not she committed the offense charged in Count One, murder in the second degree." (CALCRIM No. 303.)

5

The prosecutor opened her closing argument by stating:

> "Lisa Perez was told time and time again . . . for approximately eight years that driving under the influence was hazardous to human life, and if she continued to do so, someone was going to be hurt.

> "Yet time and time again, Ms. Perez continued to engage in that conduct despite being reminded by court-ordered programs, by her employer and being reminded just by virtue of being re-arrested for the same offense on multiple occasions in a short period of time.

> "Yet, according to Lisa Perez, in her conversations with Faye Cox, it was okay because she knew what she was doing. She understood the risks involved, she knew that she could hurt someone, but it was okay because she knew what she was doing.

> "And this is what . . . got Lawrence Perez killed in this case, and this is where that mentality, that refusal to cease that behavior despite knowing in her mind that what she was doing was hazardous to human life."

This was the heart of the People's case for conscious disregard, the various ways in which defendant had been warned about DUI dangers and her stated contrary belief that she could safely drive after drinking. The various ways in which the People sought to prove her actual knowledge of DUI dangers were directly probative to show both her actual knowledge of the danger (Evid. Code, § 1101, subd. (b)) and her explicit decision to continue her dangerous behavior by drinking and driving in the face of that knowledge. The prosecutor tied defendant's knowledge and behavior to the concept of implied malice, referencing the instructions on the subject. The argument included details about the events leading to the accident and afterwards, when defendant feigned efforts to participate in a breath alcohol test, and in response to learning of her husband's death said she had only had a few drinks, rather than showing remorse.

The defense argued there was no *direct* evidence of implied malice and attacked the individual items of circumstantial evidence, dismissing them as casual conversations, unverified by proper documentation, and so forth.

6

The evidence presented to the jury was highly relevant to her knowledge of the dangers of drunk-driving. And although it was *damaging* to the defense case, it was not *prejudicial*. " 'Prejudice' does not mean a result which is unfavorable, it means a result which is unfair." (*Zellerino v. Brown* (1991) 235 Cal.App.3d 1097, 1109; see *People v. Yu* (1983) 143 Cal.App.3d 358, 377.) " 'The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.' [Citations.] 'Rather, the statute uses the word in its etymological sense of "prejudging" a person or cause on the basis of extraneous factors.' " (*People v. Zapien* (1993) 4 Cal.4th 929, 958.)

Here, the evidence shows that over many years defendant was repeatedly made aware of the dangers of drunk driving yet ignored those warnings, in the belief that she could drive safely after drinking. It was proper for the jury to learn her level of knowledge of the risk of drunk driving in order to assess whether on this occasion she acted with conscious disregard for human life.

Accordingly, we find no error in the admission of this evidence.[2]

---

[2] To the extent defendant recasts the claim as one of federal due process error, we disagree. Generally, "when evidence is properly admitted under the Evidence Code, there is no violation of due process." (*People v. Johnson* (2015) 61 Cal.4th 734, 763; cf. *People v. Partida* (2005) 37 Cal.4th 428, 439 [even if evidence should have been excluded under state law, its admission "results in a due process violation only if it makes the trial *fundamentally unfair*"].) "Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.' [Citation.] Only under such circumstances can it be inferred that the jury must have used the evidence for an improper purpose." (*Jammal v. Van de Kamp* (9th Cir. 1991) 926 F.2d 918, 920.) For the reasons stated above there were permissible inferences the jurors could draw from the evidence of defendant's knowledge of DUI risks.

II

*Response to Jury Inquiry*

Defendant contends the trial court did not adequately respond to a jury question about "conscious disregard" and "awareness," and asserts this error was prejudicial. The point is forfeited and in any event we find no error.

The jury sent in a question asking for "Legal or otherwise applicable and appropriate definitions of: 1) Awareness[;] [¶] 2) conscious as in 'with conscious disregard.' " After discussing the matter with counsel, the trial court replied: "Please refer to instructions 200 and 520."

First, as the People contend, defense counsel agreed with the trial court's response to the jury's question, therefore the claim of error raised on appeal is not preserved. (See *People v. Castaneda* (2011) 51 Cal.4th 1292, 1352.) Counsel could rationally have thought the judge's response was adequate, therefore no ineffective assistance of counsel claim bypasses the application of forfeiture here.

Second, CALCRIM Nos. 200 and 520 were given in this case. In part, CALCRIM No. 200 as given explains: "Some words or phrases used during this trial have legal meanings that are different from their meanings in everyday use. These words and phrases will be specifically defined in these instructions. [¶] Please be sure to listen carefully and follow the definitions that I give you. Words and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings." CALCRIM No. 520 as given in part required the jury, in order to convict of murder, to find that defendant "deliberately acted with conscious disregard for human life."

As the People point out, our Supreme Court in *People v. Dellinger* (1989) 49 Cal.3d 1212, has approved the use of the phrase "conscious disregard" in connection with implied malice; indeed, it has said: "The better practice in the future is to charge juries solely in the straightforward language of the 'conscious disregard for human life' definition of implied malice." (*Id*. at p. 1221.) It also commented that an instruction

8

using the phrase " 'conscious disregard for human life' " was " 'comprehensible' " to the average juror. (*Id.* at p. 1222.) We agree the phrase as used in the instruction in this case is "straightforward" and "comprehensible" and the fact the jury sought clarification does not mean it was unable to understand the phrase when the relevant instruction was brought to its attention. The term "awareness" is also an ordinary word that did not require any special definition.

Accordingly, we find no error in the trial court's response to the jury's question.

### III

### *Sentence for Count Two*

In reviewing this case we have observed that the trial court failed to impose any sentence on count two, misapplying section 654, which requires a court to impose a sentence and then stay it, rather than stay imposition of sentence, when an act or omission violates multiple statutes. This resulted in an unauthorized *lack* of sentence. (See *People v. Alford* (2010) 180 Cal.App.4th 1463, 1467-1473, cited with approval by *People v. Duff* (2010) 50 Cal.4th 787, 795-796.)

In this case, the trial court had discretionary sentencing choices to make, including selecting from a sentencing triad before doubling the sentence for the strike, and deciding whether to strike the multiple victim enhancement appended to count two. (Veh. Code, § 23558.) We decline to make such discretionary choices in the first instance. Accordingly, the cause is remanded for resentencing on count two.[3]

---

[3] Any party who feels aggrieved by our resolution of this issue without obtaining supplemental briefing is free to employ the statutory remedy. (Gov. Code, § 68081.)

9

## DISPOSITION

The cause is remanded for resentencing on count two consistent with Part III of this opinion, and in all other respects is affirmed.

       /s/              
Duarte, J.

We concur:

     /s/           
Hull, Acting P. J.

     /s/           
Butz, J.